LOUIS L. REFELD, A. B. K. THETFORD, AND TERRENCE FAR-RELLY, EXECUTORS, MARY F. NOTREBE, WIDOW, AND ED-WARD C. MORTON AND HIS WIFE, MARY F. MORTON, HEIRS OF FREDERICK NOTREBE, DECEASED, APPELLANTS, *v.* WILLIAM W. WOODFOLK.

The Real Estate Bank of Arkansas was established on a loan by the State of Arkansas of its bonds, which the bank sold to form its capital. The stock-holders gave their bonds and mortgaged their lands to the extent of their subscriptions. Notrebe subscribed for three hundred shares, and mortgaged his land for thirty thousand dollars.

Notrebe sold the land with a covenant of warranty, and then died. The purchaser paid all the money, and the widow and heir at law of Notrebe offered to convey the land by a deed, with a covenant of warranty of title.

The Circuit Court, sitting as a court of equity, decreed that the executors should remove the encumbrance whenever it could be done, and in the mean time they should deposit with the clerk of the court bonds of the State of Arkansas to an amount sufficient to pay Notrebe's subscription, with interest, in case the bank should prove a total loss.

This decree was erroneous.

The purchaser must rely upon his remedy at law under the covenant of warranty. He can either take the deed offered by the widow and heir at law, or retain the original agreement.

The cases examined upon the point, how far a court of chancery will interfere in such a case.

THIS was an appeal from the Circuit Court of the United States for the district of Arkansas.

The case is fully stated in the opinion of the court.

It was submitted upon printed arguments by *Mr. Pike* for the appellants, and *Mr. Meigs* for the appellee.

The arguments upon both sides took a wide range, and included many points which would have been applicable, if a suit had been brought at law upon the covenant of warranty, such as that there could be no recovery, except for nominal damages, until the vendee was evicted. With respect to the interposition of a court of equity in a case situated like the present, *Mr. Pike* said:

The chief question in this case is a perfectly simple one. Woodfolk proposed to purchase certain land of Notrebe; he was informed that it was mortgaged to the Real Estate Bank, which was insolvent. The mortgage was of record; and the charter of the bank, showing the liability under the mortgage, was a public law of the land. It was totally uncertain what would be the ultimate liability under the mortgage. It was meant to cover the share of Notrebe and Cummins in any deficit of the assets of the bank. Whether there would be any deficit or not was not known. Notrebe told Woodfolk all he knew about it; that the bank attorney thought there would not. All the sources and means of information on that subject were as open to Woodfolk as Notrebe; and knowing, or having the means of knowing, all that anybody could know, he purchased the land at the low price of $10.50 per acre, and took a bond from Notrebe, to make him "a good and sufficient conveyance in fee simple, with covenant of warranty."

Can he, after occupying the land several years, and paying up the purchase money, when it is still as uncertain as ever, what, if any, will be the ultimate liability under the stock mortgage, claim at the hands of a court of equity that it shall compel Notrebe's heirs to indemnify him against such contingent liability? Or will it not be held that he made a chancing bargain, an aleatory contract, getting the land at the price he did on account of the contingent encumbrance upon it, and

taking the risk of that encumbrance? That is the whole question.

(*Mr. Pike* then proceeded to argue that the words of the covenant did not bind Notrebe to make a conveyance with a covenant against encumbrances.)

The *quia timet* jurisdiction of the court of equity is one which the court has often exercised; but it will be extremely tender in so doing, because it materially varies the agreement of the parties at the time of the transaction.

Flight *v.* Cook, 2 Ves. Sen., 620.

And the doctrine seems to be well settled, that where a deed has been executed, and the only covenants in it are for quiet enjoyment or of warranty, and so long as there has been no eviction, actual or constructive, equity will, as a general rule, refuse to entertain a bill for relief, either by way of enjoining the purchase money, or, *a fortiori,* by rescinding the contract; and, although it has been at times intimated that the presence of a covenant for seizin may in some cases fortify the position of the purchaser, it does not appear that the cases generally draw much distinction between the different covenants for title.

Rawle on Cov. for Title, 679, and the many cases cited.

If this contract is still executory, then in that case, as a general rule, the purchaser is entitled to a good title, free of encumbrances. He cannot be forced specifically to perform, unless such title can be made. If sued for the purchase money, he may enjoin its collection, or compel the removal of encumbrances. That is the general rule. But the question here is, what relief has he in equity, if, making the bargain, knowing of an encumbrance, he pays up the purchase money without requiring it to be removed, and when it is of the nature of the one here complained of?

It is not a question here, whether he could be compelled to perform his contract. He has performed it; he is in possession; has used the land and enjoyed its issues now for nearly ten years. He does not offer to give it up. He protests against doing so. If he had all the covenants he could possibly demand, there has been no breach of any of them that

would entitle him to damages; and therefore he would be entitled to recover only nominal damages at law, and would have no relief in equity; that is too clear to be denied. Rawle, 680. How can he be entitled to any more relief, because he has not yet taken a deed? He has the same covenants he would have in a deed, and they are as effectual to protect him. The difference between a contract executory and one executed by deed is, that in case of the latter, if he had no covenants, he would have no remedy; and if he had them, he must look to them. In the former case, he might resist a demand of performance, and object to taking the property or to paying the price; but when he has paid, and is in possession, it makes no difference whether the contract is executed or executory. Having chosen to perform, all he is entitled to is his convey-ance. If he could defend at law against payment of the purchase money, wholly or in part, he might have relief in equity; but he cannot be sued for what he has paid.

In Anon, 2 Freem., 106, a case was cited "where a purchaser brought his bill to be relieved where encumbrances were concealed; but was dismissed; for he ought to have provided against it by covenants; but it was said by Rawlinson, that if the purchaser had in that case had his money in his hand, this court would have helped him, but not after he had paid his money."

Again: We have sought in vain for a case where a bill, asking indemnity alone, has been sustained, or even heard of, filed by a purchaser when that indemnity was sought against an encumbrance by mortgage, well known to the purchaser at and before the time of purchase, and where he had fully paid the purchase money without requiring indemnity or complaining of the encumbrance.

It is a mere attempt "to amend the plaintiff's security in equity; to give him a better remedy for his money in chancery than he had provided for himself by the condition of the bond which he took." There was no fraud in Notrebe; he told Woodfolk all that he himself knew about the encumbrance. Woodfolk made the purchase and took the bond with his eyes open. That he has come to think the encum-

brance more serious than he imagined, is no reason why a court of equity should mend or increase his security; that is not its province. The heir of Notrebe is in no default; being a minor, she could not convey. The bill is a plain attempt to get the court of chancery to mend Woodfolk's bargain, and we see no better ground to assign for the application, than "that chancery ought to suffer no man to have an ill bargain."

A bill filed for compensation singly cannot be maintained.

Newham *v.* May, 13 Price, 749.

The jurisdiction of equity in cases of compensation is only incidental and ancillary to that of giving relief by enforcing the performance of contracts for the sale of real property. Id.

The court will give it when title to a part of the property fails, and it decrees that the purchaser shall accept, or he agrees to accept, that to which there is good title.

Besant *v.* Richards, 1 Taml., 509.

Pratt *v.* Law, 9 Cranch, 458, &c.

And there is certainly no ground on which to decree an indemnity against an encumbrance that was known to the purchaser when he made his contract, and to protect himself against which, he asked no provision to be put into the contract. The court will not insert that provision, when he himself did not think it worth his while to do so. He made his contract as he pleased, and must be content with it. If he had not known of the encumbrance, the case would be very different.

*Mr. Meigs* said that the present bill was filed to have a specific performance of Notrebe's covenant to make the complainant a good and sufficient conveyance in fee simple, if Notrebe's heirs can perform it, and if they cannot, that what title they have may be divested out of them, and vested in complainant, with indemnity against the mortgage.

*Mr. Meigs* then cited a number of cases in illustration of these principles, and then proceeded to consider the interference of a court of equity.

It is familiar law, that the general principles of the contract of sale, both in this country and in England, recognise and

enforce, while it is still executory, as in this case, the right of the purchaser to a title clear of defects and encumbrances.

Rawle on Covenants, 566.

Burwell *v.* Jackson, supra.

But, practically, how is this to be done, in a case circumstanced as the one in hand? Before the payment of the purchase money, we have seen that it can be done by an abatement of the purchase money to an amount equal to the cost of removing the encumbrance. And the vendor must discharge an encumbrance, not disclosed to the vendee, whether he has or has not agreed to covenant against encumbrances, before he can compel the payment of the purchase money.

Sugden, chap. 12, sec. 2, par. 2.

Although the purchase money has been paid, and the conveyance is executed, yet if the defect do not appear on the face of the title deeds, and the vendor was aware of the defect, and concealed it from the purchaser, or suppressed the instrument by which the encumbrance was created, or on the face of which it appeared, he is, in every such case, guilty of a fraud; and the purchaser may either bring his action on the case, or file his bill in equity.

Sugden, chap. 12, sec. 2, par. 17.

In Sergeant Maynard's case, he was denied relief, because he had parted with his money, and taken a bond for repayment of it, on a certain condition.

2 Freeman's Rep., 2.

In our case, Woodfolk took a bond to make him a good and sufficient conveyance in fee, and then paid the purchase money. And afterwards he discovers that the land is encumbered for more than its entire value, the encumbrance having been represented to him as of no validity or force, and its true nature sedulously concealed, and the deed not even shown.

Now, in these circumstances, he is entitled, unquestionably, to a conveyance of the fee simple that shall be effectual. Will the court content itself by simply decreeing that a deed shall be made, formally conveying the fee, but leaving the land under the burden of the encumbrance; or divesting what title there is in Notrebe's heir, and vesting it in Woodfolk?

*Refeld et al.* v. *Woodfolk.*

If the court be of opinion that Woodfolk is entitled to "an operative conveyance, one that carries with it a good and sufficient title to the land conveyed," as Kent said in Clute *v.* Robinson, 2 Johns. R., 612, already cited, there seems to be no practical way of effecting this, but by compelling Notrebe's heir and representatives to extinguish the mortgage, or to buy so many State bonds as shall be equal to the stock bond.

It is plain that the heir of Notrebe cannot make a good and sufficient conveyance in fee simple, without, in some way releasing the estate from the mortgage; and it is equally plain that there is no way of releasing the estate from the mortgage but by paying a sum of the State bonds equal to the stock. And Woodfolk might insist upon this; but if he is willing to take such title as can be decreed out of the heir, with an indemnity against the mortgage, that is a relief which is within the power of a court of chancery. The subject will be found pretty fully discussed in Sugden on Vendors and Purchasers, chap. 10, sec. 2. And the weight of the cases there stated and commented on cannot certainly be regarded as weakened in the least by what is reported to have been said by Lord Eldon in Balmorno *v.* Lumley, 1 Ves. and Beam., 225, cited by Sugden in chap. 7, sec. 2, par. 36. The case, when examined, cannot possibly have the slightest weight, seeing that it is reported in so crude a manner as to leave us wholly in the dark as to its circumstances.

The indemnity which the heir of Notrebe seems bound to make will be, as already suggested, the substitution of another estate instead of the land sold to Woodfolk, to be held by a trustee, to save him harmless against the mortgage. When we ask this, we only ask that Notrebe's heir shall assume the burden of Notrebe's debt, and relieve the complainant against liability for it—a liability which, in his opinion, is not merely visionary, but is extremely likely to embarrass and harass him in 1861, only a year hence.

See Halsey *v.* Grant, 13 Vesey, 73.

Horniblow *v.* Shirley, 13 Ves., 81.

Cassamajor *v.* Strode, Wilson's Ch. R., 428.

Warren *v.* Bateman, 1 Flannegan and Kelly, 443.

Mr. Justice CAMPBELL delivered the opinion of the court.

The appellee (Woodfolk) filed this bill in the Circuit Court against the executors and heirs of Frederick Notrebe, deceased, and the trustees of the Real Estate Bank of Arkansas.

He represents that, in 1845, he concluded an agreement with Notrebe for the purchase of fourteen hundred and seventy-eight acres of unimproved land in Arkansas, for fifteen thousand five hundred and eighteen dollars, a portion payable in cash, and the remainder in instalments, secured by his notes and bond. Notrebe and his wife obligated themselves, when the payment should be completed, to convey to him the land in fee simple, "by a good and sufficient deed, with general warranty of title, duly executed, according to law."

The appellee has established a plantation upon the land, and has greatly improved its value. He completed the payment in 1850, when the executor of Notrebe offered a deed executed by his widow and heir-at-law, in which there was a covenant of warranty, in fulfilment of the agreement of his testator. The appellee declined to accept this, because the land had been mortgaged to the Real Estate Bank of Arkansas, in 1837, by Notrebe, to secure the payment of his note for thirty thousand dollars, payable in October, 1861, with five per cent. interest annually, which Notrebe had given for three hundred shares of the stock of that bank. The appellee charges that the existence of this mortgage was concealed from him until after the conclusion of his agreement, and that afterwards he was deceived by misrepresentations of the condition of the title, until he had paid the whole of the purchase money. He prays that the title be examined, and that the defendants be required to remove the encumbrance, or to give him effectual indemnity against it, and that the distribution of the estate of Notrebe be restrained until this be done.

The defendants answered the bill, and have successfully repelled the imputations of fraud and misrepresentation, but admit the existence of the mortgage, and fail to impair its validity.

The Circuit Court, upon the pleadings and proofs, declare

that the "entire transaction" between Notrebe and the appellee "was bona fide and free from fraud," and that the latter had notice of the mortgage as a subsisting and operative encumbrance upon the land before he concluded his contract; but that Notrebe had agreed to convey the land free of encumbrance and with warranty of title, and that the vendee is entitled to the performance of that contract; but that the debt of the decedent, not being at maturity, and of a character not to be ascertained before that time, all that could be done would be to provide an indemnity against the peril it created.

The court proceed to require of the executors to remove the encumbrance whenever it can be done, and then to convey the land by a deed with warranty, and with the relinquishment of dower by the widow; and, meanwhile, that they should deposit with the clerk of the court bonds of the State of Arkansas, for the amount of Notrebe's note and the interest, ($61,500,) to be held and appropriated under the order of the court as indemnity, or that the executors might, in part or for the whole, convey to the clerk unencumbered real estate of the same value, for the same object and under the same conditions.

The Real Estate Bank was established on a loan by the State of Arkansas of its bonds, which the bank sold to form *its* capital. The principal and interest of these bonds were to be paid by the bank; and its means of doing so were afforded by the securities obtained from the loan of its capital and profits of business, and the bonds and mortgages of the stockholders, to the extent of their subscription of stock. Each stockholder having given a bond and mortgage to the bank corresponding to the pro rata amount of the State bonds issued to the bank, as compared with the stock, and which were pledged for the payment of the State bonds, the sum to be paid by any shareholder on this debt depends upon the degree of the insolvency of the bank. In case of the loss of its entire capital, the stockholder becomes liable to pay his entire debt.

The pleadings and proofs in this case show that the bank has suffered a loss of a portion of its capital, but no data are afforded to ascertain the amount of the loss. The decree of

the Circuit Court assumes that the loss may be total; and the indemnity awarded was determined as if the fact would cor respond with the possibility. This appeal was made to test the validity of this decree.

A court of chancery regards the transfer of real property in a contract of sale and the payment of the price as correlative obligations. The one is the consideration of the other; and the one failing, leaves the other without a cause. In Ogilvie *v.* Foljambe, (3 Mer., 53,) Sir William Grant says: "The right to a good title is a right not growing out of the agreement of the parties, but which is given by law. The purchaser insists on having a good title, not because it is stipulated for by agreement, but on the general right of a purchaser to require it."

Upon this principle, a vendor is allowed a lien or privilege for the price of the property against the vendee and his assigns; and the vendee is permitted to appropriate the purchase money, to exonerate his estate from a lien or encumbrance, and in some cases to compensate for original defects in the estate, as respect its quantity, quality, or extent of vendor's interest therein.

The cases cited on the part of the appellee support this doctrine, and confirm the argument that he was entitled, under his contract, (having no reference to extrinsic circumstances,) to the fee simple estate, without diminution. Galloway *v.* Findley, 12 Pet., 264; Burwell *v.* Jackson, 5 Seld., 535; Cullum *v.* Bank of Ala., 4. Ala. R., 21.

But such circumstances may very materially modify the situation of the parties, and indispose that court to interfere between them, even in cases within the jurisdiction of the court. If the contract has been executed by the delivery of possession and the payment of the price, the grounds of interference are limited by the covenants of the deed, or to cases of fraud and misrepresentation. "The cases will show," say this court, "that a purchaser in the undisturbed possession of the land will not be relieved against the payment of the purchase money on the mere ground of defect of title, there being no fraud or misrepresentation; and that in such a case he must

seek his remedy at law, on the covenants in his deed; that if there is no fraud and no covenants to secure the title, he is without remedy, as the vendor, selling in good faith, is not responsible for the goodness of his title beyond the extent of the covenants in his deed. Patton *v.* Taylor, 7 How., 132.

This rule, experience has shown, reconciles the claims of convenience with the duties of good faith. The purchaser is stimulated to employ vigilance and care in reference to the things as to which they will secure him from injustice, while it affords no shelter for bad faith on either part.

The intermediate cases—those in which the parties have advanced in the completion of their contract, and are still willing to abide by it, and there arises a real inability or a well-founded apprehension of danger, in that stage of their proceedings, to the completion of the contract—have created much embarrassment. Some of these cases have been settled upon terms of compensation, in which the court of chancery has exercised a doubtful jurisdiction, in modifying the conditions of the contract according to the supervening circumstances. White *v.* Cuddon, 8 Cl. and Fin., 766; Thomas *v.* Dering, 1 Keen, 729; Dart, Vend. and P., 499, et seq.

We have met with no case in which a vendee, in possession under a contract of purchase or a deed with covenants, has been permitted to reclaim the purchase money already paid, to be held as a security for the completion or protection of his title. The Roman law permitted the vendee to retain the purchase money in his hands, as security against an impending danger to the title; but denied a suit for restitution, after payment, for that cause. "We must not," says Troplong, "hastily break up a contract which the vendor may at last be able to fulfil. There is no analogy between the case in which the purchaser is allowed to retain the price as security, and that in which he would force the vendee to restore it for that purpose. Between the right of retention and that of restitution of the price, there is the distance between the statu quo and rescission. Trop. de Vente, No. 614; Dalloz Juris., gen. tit. de Vente, sec. 1170.

The decree of the Circuit Court does not direct the restitu-

tion of the purchase money to the vendee, nor its application by the vendor to assure the attainment of the object of the contract; but it sequestrates property of the vendor of four times the amount, to be held or disposed of by the court in its discretion, to assure the accomplishment of that object. In the case of Milligan *v.* Cooke, 16 Vesey, 1—14, Lord Eldon made an order that the purchaser should be compensated for the difference in the value between the title contracted for and that exhibited; and if that difference could not be ascertained, the master was directed to settle the security to be given by the defendant as indemnity to the purchaser against disturbance or eviction; and a similar order was made in Walker *v.* Barnes, 3 Mad., 247. But there were conditions in the contract that authorized the order.

In Balmorno *v.* Lumley, 1 V. and B., 224, and Paton *v.* Brebner, 1 Bligh. P. C., 42, the cases in which such a relief could be granted appear to be limited to that class. In the latter case Lord Eldon said: " This suit is in substance or effect (allowing for dissimilarities between English and Scotch proceedings) in the nature of a suit in a court of equity in England for the specific performance of a contract. In such a suit, if it turns out that the defendant cannot make a title to that which he has agreed to convey, the court will not compel him to convey less, with indemnity against the risk of eviction. The purchaser is left to seek his remedy at law, in damages for the breach of the agreement."

In Aylett *v.* Ashton, 1 M. and C., 309, the master of the rolls, upon the authority of the cases cited, said: " Parties no doubt may contract for a covenant of indemnity; but if they do not, the court cannot compel a party to execute a convey ance and to give an indemnity." To the same effect is Ridg way *v.* Gray, 1 Mac. and G., 109.

The appellee does not seek to rescind this contract; nor does he disclose any imminent peril of disturbance or eviction, as the effect of the existence of the mortgage. The record shows that the widow and heir of Notrebe, whose covenant of warranty has been offered to the appellee, are either of them able to respond to the damages that would be awarded upon

the breach of that covenant. The appellee had notice of this encumbrance when he made and performed his agreement of purchase, and did not stipulate for any additional indemnity to that resulting from the covenant of warranty. We must therefore conclude that he was willing to abide the settlement of the affairs of the Real Estate Bank, and to rely upon the protection afforded by the covenants in his deed. We have no reason to suppose that the vendor would have consented to deposit in the hands of a stranger four times the value of the property he sold, as a security for the fulfilment of his contract; nor can we superadd this to the other obligations he has assumed.

Our opinion is, that the decree of the District Court is erroneous, and must be reversed.

The deeds tendered seem to be in conformity with the stipulation of the vendor in the agreement. The vendee may elect to take these, or he may retain the agreement. In either case, his bill will be dismissed with costs; and for this purpose the cause is remanded.