Mr. Justice Cox
delivered the opinion of the Court:
*450 It appears that Bletz and one Linville were owners, either as tenants in common or joint tenants, it does not appear which, of square 270 in Washington. The defendant purchased the undivided interest of Linville at $6,000, and offered the same price to Bletz. The latter demanded $7,000 for his undivided half, and finally the parties came to terms which are expressed in two memoranda dated November 18, 1882. The first is as follows:
“This memorandum, made out in duplicate, and each party holding one, recites that F. S. Bletz agrees to sell to E. M. Willis his one-half of square (270) two hundred and seventy and the wharf adjoining it, together with all the fixtures belonging to said wharf, for the sum of $6,000 in cash, on or before the first day of January, 1883, to give a good and perfect title to said square, and that the same be free from all incumbrances; the above property located in the city of Washington, D. C.”
The other memorandum is as follows :
“This memorandum, made out in duplicate and each party holding one, recites that in case no damage is done to square (No. 270) two hundred and seventy or the wharf adjoining it, by the government of the District of Columbia, or the General Government, in any improvements or alterations made by either, prior to the first day of January, 1886, then it is agreed by E. M. Willis that F. S. Bletz shall receive one thousand dollars ($1,000) more out of said property, and that this amount shall be a claim against said property after the claim of Messrs. ITerr and Cissell; and that it shall draw 6 per cent, interest, payable annually; the amount of Herr and Cissell’s claim being twelve thousand dollars ($12,000).”
The explanation of this claim of Herr and Cissell is, that they advanced the whole $12,000 for which this purchase was made and the deed was made directly to them, to be held, by arrangement between them and Willis, as security for the advance.
*451 At this time, or on the 8th of December following, Willis gave the plaintiff a note in the following form
$1,000. Washington, D. C., December 8, 1882.
Three years after date I promise to pay to F. S. Bletz $1,000, with interest, payable at the rate of 6 per centum per annum, providing no damage is done to square 270 or the wharf or water rights immediately adjoining it at any time prior to the first day of January, 1886.
E. M.' Willis.
Suit was brought upon this note. It being a conditional note, of course it was not to be treated as commercial paper, ■and it was incumbent on the plaintiff to show the consideration and the grounds on which the liability of the ■defendant attached.
The defendant Willis defended, first, by undertaking to recoup, and next, by adducing proof that material damage had been done to the property in the interval between the date of this note and January, 1886. Verdict was rendered for the plaintiff for the full amount of the note. At the trial twenty-two exceptions were taken. Setting aside one or two that are of no importance, all of them may be divided into two groups, and as each group consists of mere variations of tlie same contention, they can therefore be disposed of by disposing of two propositions.
First, the defendant undertook to recoup. He says that by an agreement, not expressed in writing, however, but in parol — he was to have possession of the square on the 1st of January, 1883; that when he went to take possession he found a large part of it covered with coal belonging to a third person who had paid rent for it in advance, so as virtually to have a lease of the ground running to the 1st of April, and he lost the use of the premises up to that time. The next ground of recoupment was, that some of the fixtures which he was to receive/turned out not to be the property of Belto but wore claimed by a third person and he *452 had to pay a certain amount of money to acquire them. There were sundry items of recoupment which it is not necessary to go into in detail. There is one very remarkable item, not expressed in the bill of particulars but which is set forth in a letter addressed to the plaintiff, which is a claim for “ damages to the title to the wharf property by the cloud placed on it by the late decision of the Supreme Court.”
Now, this is substantially a claim of recoupment for partial failure of title. He finds part of the property virtually assigned, say for three months, to somebody else who is using it, and some of the fixtures belonging to a stranger. The question is, can he recoup under the circumstances?
As long as a contract for sale remains executory, there is no doubt that a purchaser may reclaim the money that he has paid for the property if the title proves defective, or he may defend against a claim for the purchase money. But when it is ouce executed and the deed delivered, then the purchaser has received full consideration for his promise. That consideration is such title as the vendor can convey to him and no other, and he is absolutely without remedy either at law or in equity unless the deed contains covenants of title. He cannot reclaim money that he has paid and he cannot defend against a claim of the plaintiff upon the note given for the purchase money. The rule on this point is laid down in Rawle on Covenants of Title, page 607, as follows:
“The doubt here expressed as to the right to detain the purchase money has long since been removed; and it is one of the most settled principles of the law of vendor and purchaser, that a purchaser who has received no covenants which cover the defects or incumbrance, can neither detain the purchase-money nor recover it back, if already paid. Unless there has been fraud, he is absolutely without relief, either at law or in equity.”
The same rule is laid down by the Supreme Court in sev *453 eral cases. Refeld vs. Woodfolk, 22 How., 318 ; Noonan vs. Lee, 2 Bl., 499 ; Patton vs. Taylor, 7 How., 132.
Therefore it is very apparent that unless the defendant •can show here a covenant of; title, and a breach of that •covenant, he cannot recoup on the ground of partial failure -of title. Where there has been a covenant of title and a breach shown, under certain circumstances, that could be •offered in evidence by way of recoupment, but in this case there is nothing of that sort. The defendant simply shows a conveyance made by Bletz to Herr & Cissell, who advanced the money for the purchase of the property. The deed is not set out in the record, and we do not know what covenants it contains, if any, and the covenants, if any, are with Herr & Cissell and not with, this defendant. One-group of the exceptions taken here refer entirely to this question of recoupment, and are all disposed of by these considerations.
The next position taken by the defendant is as to the actual damage done to the property. At the time of this purchase there were two works in the course of prosecution, viz., the Government work in reclaiming the Potomac fiats and certain works in the way of improvements of streets adjacent to this property. The defendant undertook to show that the process of dredging in the Potomac had .stirred up mud which settled in the dock, and it cost the defendant $500 to have it dredged out; also, that loose material from the adjacent streets was washed into the dock.
The plaintiff on the other hand, endeavored to show that, notwithstanding this temporary damage to the wharf, it was improved in value by these works ; that, on the whole, the defendant had lost nothing but had gained ; that the property was greatly improved by the works prosecuted in the manner already mentioned. For example, the water in front of this w'harf had been deepened from 10 to 20 feet ■and much larger vessels could approacli it than before the improvements. The question is, what is a fair construction *454 of the contract, if on the whole, benefit resulted from the-improvement? Is that to be credited to the improvement or are we to consider only the temporary damage or expense to which the defendant was put? It seems that the fair construction of the agreement is, that the property must be damaged permanently ; the permanent value must be reduced by these improvements in order to make that' a ground of defense to this note. The parties were bargaining for a fee simple title in this property. It was substantially agreed between them that it was worth $7,000, unless any prosecution of these works resulted in damage to this property — the square, the wharf or the.wafer rights. Now, water-rights are incorporeal easements, and are permanent things, and damage to water rights means something permanent.. It was apprehended that the improvements in the river might deflect the channel from this wharf. If that had been the case, there would have been permanent damage-to it, and that would have been just ground of defense, but the evidence in the case tends clearly to show that on the whole it was greatly benefited by this improvement. The defendant, in his own testimony, given several years, it is true, after the maturity of this note, says that he sold the wharf for some $20,000, and he valued the remainder of the property at $35,000, making the property worth to him $55,000; i. e., more than four and one-half times what he-gave for it. Of course one element in that advance is the-general rise of property in the District, but the court took especial pains to eliminate that element from the consideration of the jury in determining the question of damages. The court laid down these propositions:
First. It was incumbent upon the plaintiff to show affirmatively that no damage was done to this property by the improvement; next, if damage was done, but on the-whole the property was increased in value at the expiration of this period during which the note was to run, the plaintiff -was entitled to recover, and the general rise of *455 property in the District was not to be considered by the jury in deciding whether the property was really damaged or benefited.
Now, we do not see that any fairer instructions could have been given. We are satisfied they are correct, and that disposes of all the other exceptions without examining them in detail.

We think, therefore, the motion for a new trial must be overruled.