CENTRAL TRUST CO. OF NEW YORK v. LOUISVILLE TRUST CO. et al.

(Circuit Court, D. Kentucky.    March 21, 1898.)

1. EQUITY—JURISDICTION.
    A bill in equity against mortgagees for compensation of a trustee in foreclosing the mortgage, and for costs and attorneys' fees, under a contract of indemnity, may be maintainable as to the costs and attorneys' fees even if the mortgagees are not liable for the trustee's compensation.

2. DEMURRER—QUESTIONS CONSIDERED.
    On demurrer to a bill by a trustee under a mortgage for attorneys' fees and costs, which were allowed in the foreclosure suit, the question whether or not the adjudication as to the attorneys' fees was an allowance only against the mortgaged property, or whether it was a personal liability against the trustee, will not be considered where that case is not a part of the bill.

3. CONTRACT OF INDEMNITY—EQUITY JURISDICTION.
    A majority of the bondholders directed the trustee, under the mortgage securing the bonds, to declare them matured, and foreclose the mortgage, and, in accordance with a provision in the mortgage, agreed "to indemnify and hold harmless the said trustee from any loss or damage on account of costs, counsel fees, or other expenses of such litigation under this request." Held, that a court of equity has jurisdiction to enforce the contract of indemnity by requiring the bondholders to pay costs and attorneys' fees for which the trustee became liable, though it had not yet paid the same.

Humphrey & Davie, for complainant.

Bullett & Shields, for Louisville Banking Co.

Theo. Harris, Thos. W. Bullett, and St. John Boyle, for defendant Louisville Trust Co.

BARR, District Judge.   It appears from the bill in this case that the complainant is a trustee in a mortgage executed by the Richmond, Nicholasville, Irvine & Beattyville Railroad Company of its property, to secure the sum of about $2,300,000 of coupon bonds; that there was a provision in the mortgage that, upon default of payment in the interest for six months, a majority of the bondholders could elect to have the trustee precipitate the maturity of the bonds, and take possession of the mortgaged property, and have a foreclosure and sale through the court.   The mortgage provided that the trustee should not be required to do this until the trustee had been indemnified by the bondholders, making such a request, against costs, counsel fees, and other expenses of the litigation; and, under this provision, the defendants in this case (except Richards & Baskin), who were bondholders under the mortgage holding more than a majority of said bonds, requested the complainant to mature the coupon bonds, and institute foreclosure proceedings, and in the request the holders of said bonds agreed "to indemnify and hold harmless the said trustee from any loss or damage on account of costs, counsel fees, or other expenses of such litigation under this request."   The complainant matured the bonds, and instituted in this court a foreclosure procedure, which resulted, after much litigation, in a foreclosure of the mortgage and a decree of sale, which decree of sale was appealed from, and in part reversed.   After the case returned from the court of appeals, a final decree was entered.   It is alleged in the bill that the liens which were adjudged superior to the mortgage are so greatly in excess of the whole value of said property that the sale of said property will not bring enough to satisfy the claims prior to said bonds, and nothing will be realized to your orator out of said property.   While it is not alleged, it is a fact, however, that the mortgaged property has been sold since filing of bill, and nothing will be realized to the bondholders represented by the complainant.   It is alleged in the bill that the court allowed the complainant $1,000 as a reasonable compensation for its services as trustee, and that the complainant was compelled to pay expenses amounting to the sum of $581.71, and became bound to pay counsel fees of counsel employed by it in a reasonable sum for their services.   It is also alleged that the fees of the defendants Richards & Baskin, surviving partners of Richards, Weisinger & Baskin, which were allowed by the court, were, first, $15,000 for their services rendered in the trial court, and, subsequently, $2,500 for services rendered in the circuit court of appeals; and that the defendants, signers of said paper and agreement, have failed and refused, and still fail and refuse, to pay the expenses of your orator, and the allowance made to your orator for compensation and the counsel fees to Richards, Weisinger & Baskin, or any part thereof.   The prayer of the bill is "that the amount due, owing, and unpaid for the compensation, expenses, and counsel fees may be charged and determined, and

that the payment of so much thereof as shall be due by the said defendants, or any of them, may be decreed by this court, and that your orator may be indemnified and saved harmless from any loss, expenses, and counsel fees aforesaid; that the signers of the agreements aforesaid may be compelled to pay off and discharge the expenses, compensation, and counsel fees aforesaid, so that your orator may be relieved from any obligation thereon or liability therefor."

The demurrer raises the question of whether or not there is any cause of action stated, and, further, whether, if there is, it is cognizable in equity. Before considering the main question, we may state that the compensation to the complainant is not covered by the terms of the indemnity sued on, and it may be that the defendants are not liable in this action even to the proportion which their bonds bear to the entire number, for said compensation. But this fact does not prevent the bill being maintainable for the attorney's fee which has not been paid and the costs which have accrued, for which the complainant is liable, if the suit is properly filed in equity; nor should we on this demurrer consider whether or not the adjudication as to the amount of the attorneys' fees which have been allowed in the foreclosure suit to the attorneys who brought said suit is an allowance only as against the mortgaged property then in the custody and control of the court, or whether it is a general allowance against the complainant, making it personally liable therefor. That case is not made a part of the bill and we must therefore take the bill as true in that regard. Taking the allegations for true, the amount has been ascertained by the adjudication in the very case which complainants were requested to bring.

The question presented by the demurrer is one almost entirely without direct authority. Mr. Story (Story, Eq. Jur. § 850) states the law thus:

"Courts of equity will decree the specific performance of a general covenant to indemnify, although it sounds in damages only, upon the same principle that they will entertain a bill quia timet; and this not only at the instance of the original covenantee, but of his executors and administrators. Thus, where a party has assigned several shares of the excise to A, and the latter covenanted to save the assignor harmless in respect to that assignment, and to stand in his place, touching the payments to the king and other matters, and afterwards the king sued the assignor for money which the assignee ought to have paid, the court decreed that the agreement should be specifically performed, and referred it to a master, and directed that, toties quoties any breach should happen, he should report the same especially to the court, so that the court might, if there should be occasion, direct a trial at law in a quantum damnificatus. The court further decreed that the assignee should clear the assignor from all these suits and incumbrances within a reasonable time. The case was compared to that of a counter bond, where, although the surety is not molested or troubled for the debt, yet, after the money becomes payable, the court will decree the principal to pay it."

To sustain this proposition, the cases of Champion v. Brown, 6 Johns. Ch. 405, and Ranelaugh v. Hayes, 1 Vern. 189, are referred to. The case of Champion v. Brown, decided by Chancellor Kent, is a very elaborate case, and seems to me to sustain the text of Justice Story. This case, and the case of Ranelaugh v. Hayes, 1 Vern. 189, have been reviewed by the supreme court of Michigan in Bank v. Hastings, 1 Doug. 235. The learned judge in the Michigan case

explains the case of Champion v. Brown as merely deciding that the covenant there made the defendants stand in the place of the intestate of complainant, and that they assumed the payment to Champion & Storrs which the estate of the intestate stood charged with.    Therefore the court claims that it is not an authority for the specific performance of a covenant merely for indemnity, but that the obligation of the covenant was directly to pay; and so with the case of Ranelaugh v. Hayes, 1 Vern. 189.    I do not understand that Chancellor Kent decided that the covenant made the parties Champion & Storrs directly liable to the original party for the debt which Paddock had agreed to pay.    It is true, the chancellor used the following language in that case:

"In the case before me, the defendants, by their covenant of indemnity, and purchase of the contract between C. & S. and P., undertook to relieve the estate of P. from the burden of that contract.    This is the true intent and meaning of the agreement; and it is as just that they should be decreed to clear the representatives of P. from the charge which they assumed for them as it is that a principal debtor should exonerate his surety before he is sued, and not leave 'a cloud always hanging over him.'"

The statement of the case, we think, makes this clear.    It appears that Henry C. and Lemuel Storrs agreed to sell and convey to John Paddock 952 acres of land for the sum of $8,000, $500 to be paid in cash, and the residue to be paid in six annual installments.    John Paddock died, intestate, November 16, 1816; and his administrators and heirs, being unable to perform the contract, for want of personal assets, on the 1st of June, 1818, entered into an agreement with the defendants, John Brown and Jacob Brown, by which the defendants covenanted and agreed that "they would take up and cancel" the contract made between Champion & Storrs and Paddock, etc., by the 1st day of August then next, or in case Champion, the survivor of Storrs, should refuse to give up and cancel the said contract, then the defendants covenanted to indemnify and save harmless the administrators of Paddock, etc., from all damages, costs, charges, and expenses which they might sustain or be put to on account of the claims, covenants, and agreements in said agreement contained, etc.    Lemuel Storrs died intestate, and, in the distribution and settlement of the estate, all his interest in the contract became vested in the plaintiff, William L. Storrs.    Soon after the agreement between the defendants and the administrators of P., the former entered and took possession of the land, and have since continued in possession, exercising ownership, receiving rents, cutting timber, etc.    But they have made no payments, nor taken up the contract between Paddock and Champion & Storrs, but the representatives of P. still remain liable to be sued upon it.    The bill prayed for a discovery, and that the defendants may be decreed specifically to perform the contract between Champion & Storrs and Paddock according to the true intent of the agreement between the defendants and Paddock, and for their indemnity, the heirs offering to ratify and confirm the conveyance of the land to the defendants in fee, etc., and for general relief.    So, the original contract had not been taken up, and the purchasers Brown had not become directly liable to the original vendors, and they could not have sued directly upon said obligation.

The opinions of the supreme court referred to by counsel are not, we think, in point. The case of Wicker v. Hoppock, 6 Wall. 94, was a suit at law, and the question was as to the measure of damages for the nonperformance of an agreement to bid in certain property which was to be sold under a decree obtained by the party who subsequently sued, the agreement being that the party there sued would bid in the property for the amount of the judgment, with interest and costs. The court below allowed the amount of the judgment, with interest and costs, as the measure of damages, and in the supreme court Justice Swayne says:

"If the contract in the case before us were one of indemnity, the argument of the counsel for the plaintiff in error would be conclusive. In that class of cases the obligee cannot recover until he has been actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well-settled distinction between an agreement to indemnify and an agreement to pay. In the latter case a recovery may be had as soon as there is a breach of the contract, and the measure of the damages is the full amount agreed to be paid."

It is evident the learned justice was considering the question only from a legal standpoint.

The case of Mills v. Dow's Adm'r, 133 U. S. 424, 10 Sup. Ct. 413, was a case at law, and the obligation of the covenant was not only to save harmless, but directly to pay the contracting party's obligation.

The case of Johnson v. Risk, 137 U. S. 308, 11 Sup. Ct. 111, is equally without application. There the question was whether or not there was a federal question, and whether the Tennessee statute of limitation applied.

The case of Refeld v. Woodfolk, 22 How. 318 (not cited by counsel), is in principle more applicable to the question under consideration. The facts in that case are, briefly, these: A man named Notrebe sold to Woodfolk a plantation in Arkansas. At the time of the purchase, there was an incumbrance arising out of Notrebe's subscribing 300 shares of the Real-Estate Bank of Arkansas, and mortgaging the land for $30,000. Notrebe and wife obligated themselves to Woodfolk that, upon the payment of the purchase money, they would convey to him by good and sufficient deed, with general warranty of title duly executed according to law. Woodfolk, the purchaser, paid all of the purchase money. Notrebe died, and, in winding up the Real-Estate Bank of Arkansas, there was a danger of a heavy liability upon the original mortgage to the bank. Woodfolk filed his bill for indemnity against the mortgage, and the court below gave him a decree requiring that the heirs of Notrebe "remove the incumbrance whenever it can be done, and then to convey the land by a deed with warranty, and with the relinquishment of dower by the widow, and meanwhile that they should deposit with the clerk of the court bonds of the state of Arkansas, for the amount of Notrebe's note and the interest ($61,-500) to be held and appropriated under the order of the court as an indemnity, or that the executors might, in part, or for the whole, convey to the clerk unincumbered real estate of the same value, for the same object, and under the same conditions." The

supreme court reversed the case, holding that as the transaction between the parties was bona fide, and the purchaser knew of the existing incumbrance, he must rely upon the covenants of his deed, and could not get the indemnity in advance; but I do not understand this case deciding that a court of equity had not jurisdiction to grant indemnity, but merely that the facts in that case did not authorize the relief granted, and that, by the terms of the contract between the parties, the purchaser was to rely upon the general warranties of his deed. .

The recent English case of Wolmershausen v. Gullick [1893] 2 Ch. 514, is one in which the court, in a very elaborate opinion, sustained the jurisdiction to give indemnity to a surety against a co-surety. In that case the court (Justice Wright) reviewed the English authorities, and held that a court of equity would grant relief for indemnity to a surety although he had not paid. The case is a very elaborate one, and all of the English authorities seem to be reviewed.

It is conceded by counsel for the demurrant that there are cases where sureties have been protected by a court of equity against liability before payment; but it is insisted that it is only in cases where the defendant is liable directly on the debt, or where by the agreement he has agreed to pay as well as indemnify. The case of Wolmershausen v. Gullick was one of surety, in which the indemnity was granted without payment, but no such distinction was taken by the court; and the jurisdiction was put entirely upon equitable grounds, and not because of the liability of the surety on the original contract. In some of such cases the original creditor was not before the court at all; and in none where the relief was granted was it because of any right of the original creditor, or because of a contract by the defendant with a creditor. If relief is given to a surety, it is given upon the equitable principle of equality. If given to party holding a contract of indemnity, and not directly liable to the original creditor, the relief is given upon the contract of indemnity, and the equity arising therefrom. Thus, in Stirling v. Forrester, 3 Bligh, 575, in the house of lords, Lord Redesdale, said: "The principle established in the case ·of Dering v. Lord Winchelsea, 1 Cox, Ch. 318, is universal, that the right and duty of contribution is founded upon doctrines of equity. It does not depend upon the contract." And in the case of Lacey v. Hill, L. R. 18 Eq. 182, Jessel, M. R., said:

"Whatever be the case at law, it is quite plain in this court that any one having a right to be indemnified has a right to have a sufficient sum set apart for that indemnity. It is not very material to consider whether he is entitled to have the sum paid to him, or whether it must be paid directly over to the creditor. If the creditor is not a party, I believe it has been decided that the party seeking indemnity is entitled to have the money paid over to him."

This, of course, would be with proper security that the money thus paid over would be properly applied.

Our attention has not been called, in the very elaborate briefs of counsel, to a case like the one at bar in which the relief now sought had been refused. It must not be overlooked that the com-

plainant in this case was a trustee for the defendant bondholders; that, by the terms of the mortgage, complainant was not bound, except upon the request of the holders of a majority of the bonds, with an indemnity by them or others against all costs or expenses, to foreclose the mortgage; that the action of the complainant was entirely in the interest and for the benefit of the bondholders in thus instituting the suit and foreclosing the mortgage; that there was neither a direct nor an implied obligation upon the part of the trustee that it should advance the expenses of the litigation, and look alone to the mortgaged property, but, on the contrary, if there had been no provision for indemnifying the trustee for the expenses of the litigation, and the foreclosure had been at the request of the cestuis que trustent under the mortgage, there would be an implied obligation to repay to the trustee, if the mortgaged property was insufficient, the expenses of the litigation. Here, if this procedure be considered as one for a specific performance, the language of the contract justifies the payment by defendants of the liability which has accrued in the mortgage foreclosure, since the obligation is not only to indemnify, but "to hold harmless the trustee from any loss or damage on account of costs, counsel fees, or other expenses in such litigation." It cannot be said that these bondholders are holding the complainant harmless from any loss on account of counsel fees or other expenses of the litigation, if the complainant is required, as indicated by the argument for the demurrant, to pay counsel fees, and then litigate with the signing bondholders the reasonableness of the compensation thus paid.

We have concluded, therefore, under the circumstances, that a court of equity has jurisdiction to grant the relief prayed. It is not intended to indicate an opinion as to whether or not the allowance made in the foreclosure suit is binding upon the defendants, or whether or not the scope of the order making such allowance is to bind the complainant. We are considering the demurrer as it must be upon the facts as stated in the bill. It follows from this view that the demurrer must be overruled, and it is so ordered.