INDIANA NATIONAL BANK OF INDIANAPOLIS *v.* DANNER, RECEIVER.

[No. 26,158. Filed January 28, 1932.]

*William W. Hammond, C. Severin Buschmann, William C. Kern, Leo M. Gardner* and *Robert C. Kewley,* for appellants.

*Theophilus J. Moll, Merle N. A. Walker* and *Walker & Hollett,* for appellee.

ROLL, J.—Appellant, The Indiana National Bank of Indianapolis, filed its verified claim with the receiver of The Direct Advertising Corporation for money loaned to the Mutual Printing and Lithographing Company, all the assets having been taken over and all debts having been assumed by the Direct Advertising Corporation. Appellant's claim was evidenced by five promissory notes, the total amount of principal being $24,198.62. The total amount due, including interest and attorney's fees, being $33,732.34, for which amount it asked judgment.

The claim was disallowed by appellee, and the cause was set down for trial by the court without the intervention of a jury. The evidence was stipulated by the parties, and the court found that appellant was enti-

tled to have its claim allowed in the sum of $2,730.08, and ordered the receiver to pay the same.

Appellant filed its motion for a new trial, which was overruled by the court. The overruling of appellant's motion for a new trial is assigned as error on this appeal. In its motion for a new trial, appellant assigns three reasons: (1) That the decision of the court is contrary to law; (2) that the decision of the court is not sustained by sufficient evidence; (3) error in the assessment of the amount of recovery, same being too small.

The facts in this case are as follows: For a long time prior to January 1, 1922, The Indiana National Bank of Indianapolis, hereinafter referred to as "the bank," had been a creditor of the Mutual Printing and Lithographing Company. Some time after January 1, 1922, the Direct Advertising Corporation, for and in consideration of the transfer of all of the assets of the Mutual Printing and Lithographing Company to it, assumed all of the liabilities of the latter company. The claimant's indebtedness was among the liabilities assumed.

On August 9, 1922, a receiver was appointed by the superior court of Marion County for the Direct Advertising Corporation. On August 11, 1922, a receiver was appointed by the same court for the Mutual Printing and Lithographing Company. At the time of the appointment of the receivers of the two companies, the bank was a creditor in the amount of $24,198.62, which was represented by promissory notes of the Mutual Printing and Lithographing Company. These notes represented amounts which were renewals of a much larger indebtedness which had existed prior to the appointment of the receivers. The total amount of these notes, $24,198.62, was one of the liabilities assumed by the Direct Advertising Corporation. Neither this company nor the Mu-

tual Printing and Lithographing Company ever put up any collateral for this indebtedness or paid any part of the same.

Baird G. Saltzgaber was an officer of the Mutual Printing and Lithographing Company, and, prior to his death, had created a trust in certain life insurance policies on his own life in favor of the bank, the validity of which was established by a judgment. The trustees paid the said bank $28,602.16, which represented the entire proceeds of the trust in the policies of insurance, and the amount was applied against interest on the indebtedness which had accrued in the amount of $8,323.69, against attorney's fees which had accrued as provided in the notes in the amount of $1,209.93, and against the principal indebtedness in the amount of $24,198.62, leaving a principal balance of $5,130.08. This was reduced by the receipt of $2,400 from the receiver of the Mutual Printing and Lithographing Company, and the principal remaining due and unpaid was $2,730.08.

The original obligation owed to the bank by the Mutual Printing and Lithographing Company was guaranteed by William E. Henkel and Baird G. Saltzgaber, but this guaranty was solely for the accommodation of the Mutual Printing and Lithographing Company. The estate of Baird G. Saltzgaber, deceased, was insolvent, and did not have sufficient assets to pay any dividend to the bank. The Mutual Printing and Lithographing Company never put up any collateral for the payment of the original indebtedness, nor did it pay anything on the indebtedness except $2,400 which was received from the receiver of that company. All other payments upon the obligation owed the bank were made from outside sources, namely, from the trust created by Baird G. Saltzgaber in certain policies of insurance on his own life, and from the receiver of the Mutual Printing and Lithographing Company.

The five exhibits attached to the bank's petition and identified as A, B, C, D and E are the notes executed by the Mutual Printing Company by B. G. Saltzgaber, its treasurer. The note identified as Exhibit A is in the amount of $9,600; the note identified as Exhibit B is in the amount of $3,200; the note identified as Exhibit C is in the amount of $2,500; the note identified as Exhibit D is in the amount of $3,000, but has a credit thereon of $101.38, which makes its amount $2,898.62; the note identified as Exhibit E is in the amount of $6,000. The total amount of the principal indebtedness as shown by these notes was $24,198.62. The total principal indebtedness, with interest and attorney's fees, at the time of the payment by the trustees of the trust in the life insurance policies amounted to $33,732.34.

When the payment out of the trust and the payment by the receiver of the Mutual Printing and Lithographing Company are deducted, the balance of $2,730.08 remains unpaid.

Appellant claims that its share of the dividends from the general assets should be figured on the basis of the amount of its claim at the time of the appointment of the receiver, subject, of course, to the qualification that it should in no event receive more than the face of its claim. The court below reduced said claim by the amount realized from receiver and from the sale of the collateral, and allowed it in the sum remaining.

The question presented by this appeal is, whether the action of the court was correct in reducing appellant's claim in the amount which it had received from the collateral it held from a third party, or should the court have allowed appellant's claim without regard to such collateral. It is appellee's contention that the case of *Union Trust Co.* v. *Fletcher, etc., Trust Co.* (1924), 194 Ind. 314, 142 N. E. 711, is decisive of this question, and

is relied upon by appellee. It was said in that case (syllabus) that: "A creditor of an insolvent corporation which is in the hands of a receiver, who has received a part of his debt by the sale of collateral which he held as collateral therefor, is not entitled to have his claim allowed for the full amount of the debt as a basis for determining his share of the fund for distribution among creditors, but only the remainder of the debt after deducting the amount received from the collateral."

It is contended by appellant that the facts in the above case are materially different from the facts in this case, that in *Union Trust Co.* v. *Fletcher, etc., Trust Co., supra,* the collateral which was held by the claimant belonged to the insolvent estate, and that the collateral in the case at bar was in no way the property of the insolvent, but was that of a third party.

The exact question here involved has never been passed upon in this state, and we may look to other jurisdictions for guidance in deciding this question. In *McGrath* v. *Carnegie Trust Co.* (1917), 221 N. Y. 92, 116 N. E. 787 (opinion by Judge Cardozo), we have a state of facts very similar to the facts in the case at bar. In that case, the bank had a claim of $140,000 against the insolvent trust company but it did hold a secondary liability against other parties from whom it received payment to the extent of $16,000. The bank filed its claim for the full amount of $140,000 against the insolvent. It was contended in that case that the claim should have been reduced first by deducting the $16,000, and then filed for $124,000. This contention was upheld by the lower court, but was reversed on appeal, the court holding that the bank should be allowed to file for $140,000. The court said that the insolvent "has no concern with payments made by strangers."

In the case of *Carter* v. *Tanners Leather Co.* (1907),

196 Mass. 163, 81 N. E. 902, 12 L. R. A. (N. S.) 965, the creditor held two notes of the insolvent, which were secured by two indorsers, who paid a part of the notes. The creditor sought to file his claim for the full amount of the note, notwithstanding partial payments had been made by the indorsers. The court held that the creditor was entitled to file his claim for the full amount, for the reason that the payments were not made from the insolvent estate, and, therefore, the creditor was not a secured creditor and was entitled to participate on the basis of its original claim unreduced by the payments.

The case of *Bank Commissioners* v. *Trust Co.* (1900), 70 N. H. 536, 49 Atl. 113, contains a very full discussion of the "bankruptcy rule" and the "chancery rule," and adopts the bankruptcy rule, and holds that, where the creditor holds collateral of the insolvent estate, the claim should be reduced in the amount of the value of the collateral. In that case, the insolvent bank had sold notes secured by mortgages of real estate and guaranteed the payment of the interest coupons attached at maturity and the principal within two years after maturity, and reserved the right to repurchase the notes at any time at their face value with accrued interest added. The holders of the notes had presented claims upon the guaranty. Upon this question, the court said: "The rule does not apply to the cases in which the defendants have sold notes secured by mortgage or pledge, and guaranteed their payment. In such cases, as has already been seen, the defendants' promise is independent of that of the maker of the note. The creditor holds no security for the defendants' promise. The defendants have no equity in the property mortgaged or pledged to secure the debt; the property is no part of the estate under administration. The maker's equity in the property cannot be taken from him by an agreement between the creditors and the assignee, nor, since the

maker is not a party to the proceeding, by any action of the court. The only way in which the defendants or the assignee can get the benefit of the collaterals is to fulfill the guaranty and as a consequence be subrogated to the creditors' rights. . . . Creditors holding the defendants' guaranties are entitled to prove the full amount due upon them, without regard to the securities which the creditors may hold from the original debtor."

The reason for this distinction is pointed out in the case of *In re Pan-American Match Co.* (1917), 242 Fed. 995, at page 996. The court said: "A creditor's claim may be amply secured, but he is not a 'secured creditor,' within the meaning of the act, unless the security is on 'property of the bankrupt.' The reason for such a rule probably is that, when no property of the bankrupt is held as security, the claim is, as to the estate, an unsecured one, and may eventually be so presented against it."

In the case of *In re Levin Bros.* (1903), 139 Cal. 350, 73 Pac. 159, we find that "Levin Brothers" was a partnership composed of three brothers, Isadore, Julius and David. They were adjudged insolvent, and the firm was also adjudged insolvent. As far as the opinion is concerned, it does not appear that there were any individual creditors. The Anglo-California Bank, appellant in the case, held a mortgage to secure its indebtedness upon the separate property of Isadore Levin, one of the partners. Appellant's claim against the partnership amounted to $33,500, and the value of the mortgaged property was $6,000. The property of Isadore Levin so pledged as security to the bank was his homestead and was exempt by statute in insolvency proceedings. It was contended by some of the creditors that the bank should reduce its claim of $33,500 by $6,000, which was the amount of the mortgage held on the Isadore Levin property. The court adopted the bankruptcy rule, and

used the following language: " 'The rule in bankruptcy proceedings, however . . . has always been that a creditor having security upon the goods of his debtor, which, but for his lien, would have gone to swell the amount to be divided among the creditors, must, before he can prove his claim, either surrender his security to be administered in the proceeding for the benefit of the creditors, or prove only for the balance after deducting the value of his security, . . . but it has always been held that the creditor is not required to make a deduction, but may prove his whole claim, although he has security given by third parties, or upon the separate estate of one of the partners. . . . This last proposition is universally recognized in this country and in England, with the exception of a single case in Tennessee and some cases in Massachusetts, which the high reputation of that court, and the indorsement of Chief Justice Shaw, failed to make current elsewhere, and which, I believe, are now repudiated, even in Massachusetts.' "

We think the distinction contended for by appellant in this case is almost universally recognized. The application of the rule in this case could work no hardship on the other creditors. The collateral, had it been surrendered by appellant, would have added nothing to the insolvent estate. To apply the rule contended for by appellee would not permit the appellant to receive an equal share with the other creditors. This rule in no wise conflicts with the rule laid down by this court in the case of *Union Trust Co.* v. *Fletcher, etc., Trust Co., supra.* We think the lower court erred in requiring appellant to reduce its claim in the sum of $28,602.16, being the amount appellant received from the trust fund established by Baird G. Saltzgaber. There was no error in requiring appellant's claim to be reduced by deducting $2,400, which was the amount appellant received from the receiver of the Mutual

Printing and Lithographing Company. This was money received from the property of the insolvent and not from a stranger to the proceedings. Appellant should have been allowed to file his claim for $31,332.24, and its share of the dividends should have been computed upon said amount, and paid to appellant until the balance of its claim has been paid in full, but no more.

Judgment reversed, with instructions to the lower court to sustain appellant's motion for a new trial, and for further proceeding not inconsistent with this opinion.