OLD FIRST NATIONAL BANK AND TRUST COMPANY OF FORT WAYNE ET AL. *v.* SCHEUMAN ET AL.

[No. 26,971. Filed March 10, 1938. Rehearing denied December 13, 1938.]

*Vesey & Shoaff,* for appellant.

*Eggeman, Reed & Cleland,* for appellees.

HUGHES, J.—This action was first instituted by the State of Indiana on the relation of Luther F. Symons, Bank Commissioner, for the appointment of a receiver for the Citizens Trust Company. The appellees, Scheuman and Kunkel, were appointed receivers. In this action the Old First National Bank and Trust Company filed a cross-action to procure the allowance of a claim for a certain sum against the receivership of the Citizens Trust Company and to have the same declared a vendor's lien on certain described real estate. The cause was put at issue upon two paragraphs of complaint and three paragraphs of answer.

The first paragraph of complaint alleged that:

"On June 6, 1932, the defendant above named was then and there insolvent, and receivers were appointed for it, and on said date said defendant had on deposit with claimant the sum of Two Hundred and Fifteen Thousand One Hundred and Seventy-six and 79/100 Dollars ($215,176.79) together with interest accrued thereon in the sum of One Hundred and Forty-one and 4/100 Dollars ($141.04).

"On said date said defendant was indebted to claimant on its certain certificate of deposit, a copy of which is attached hereto, filed herewith, made a part hereof and marked 'Exhibit A,' dated January 2nd, 1932, in the principal sum of One Hundred and Eighty Thousand Dollars ($180,000.00), upon which there had accrued interest in the sum of Three Thousand One Hundred and Twenty Dollars ($3,120.00), and on which certificate of deposit there was due on July 1, 1932, the sum of Twenty-five Thousand Dollars ($25,000.00) pursuant

to a certain contract executed between said defendant and First and Tri State National Bank and Trust Company of Fort Wayne, and on said date said defendant was also indebted to claimant on its promissory note dated February 17, 1932, on which there was due the principal sum of Eighty-four Thousand and Eighty-five and 26/100 Dollars ($84,085.26), and accrued interest in the sum of One Thousand Six Hundred and Thirty-four and 38/100 Dollars ($1,634.38), and on said date said defendant was also indebted to claimant on a check in the sum of Eight Hundred and Sixteen and 20/100 Dollars ($816.20) ; that on said date claimant charged the account of said defendant on account of said certificate of deposit with the sum of One Hundred and Eighty-three Thousand One Hundred and Twenty Dollars ($183,120.00) and also charged the account of said defendant with the sum of Thirty-one Thousand Three Hundred and Eighty-one and 63/100 Dollars ($31,381.63), which it credited on said promissory note, and also charged said account with the additional sum of Eight Hundred and Sixteen and 20/100 ($816.20) Dollars on account of said check; that after the appointment of receivers for the defendant above named, a certain contract was entered into between them and claimant, a copy of which is filed herewith, attached hereto, made part hereof, and marked "Exhibit B," and which contract was approved by this court on July 26, 1932, by the terms whereof it was agreed that claimant should and actually did charge the said deposit account of said defendant with the sum of Eighty-four Thousand and Eighty-five and 26/100 Dollars ($84,085.26), and additional interest thereon of One Thousand Six Hundred ($1,600.00) Dollars for interest, and it was further agreed that said defendant should and it actually did, restore to the credit of said defendant and its receivers in said deposit account, the sum

of One Hundred Thousand One Hundred and Eighty-one and 99/100 Dollars ($100,181.99).

"It was further provided by said contract between claimant and said receivers that claimant should have the right to retain the collateral security described in said contract and sell or otherwise dispose of the same in accordance with the terms of the contract by which the same was pledged as collateral, and apply the proceeds of the sale or collection or other disposition of the same, when and as received, against the unpaid balance of said certificate of deposit; that claimant did retain said collateral and there is attached hereto, made part hereof, filed herewith, and marked 'Exhibit C,' a detailed list of the collateral so held by it on June 8, 1932, which consists of collateral notes and mortgage notes, and on which exhibit there is shown the names of the makers of said notes, the principal amounts thereof, the description of any collateral pledged to the payment of said collateral notes, dates of the last payment of interest, and the balance due thereon all as of June 8, 1932; that claimant asserts that it has a first and prior lien upon and right to all of said notes described in Exhibit C and the collateral thereto, with the right to collect, sell or otherwise dispose of the same or any part thereof, all as collateral security for the payment of the balance due on said certificate of deposit hereinbefore described and interest thereon, and any claim against the defendant above named, including liability of said defendant on account of the guaranty executed by it in connection with the sale of mortgage notes, as hereinafter specifically described in claimant's second paragraph of claim, but that claimant is willing to surrender said collateral and notes or such part thereof as remain unpaid, upon the full payment of claimant's claim against the defendant, as set forth in this claim and the proper securing of the performance of the guaranty of the defendant

on the mortgage notes purchased by claimant from defendant, as specifically set forth in claimant's second paragraph of claim, and that by the filing of this claim, claimant does not, in any way, waive the right to collect, sell and/or dispose of any or all of said notes and collateral so described in said Exhibit C.

"That said certificate of deposit hereinbefore referred to represents the unpaid balance of the purchase price of the banking building owned by said defendant, consisting of the following described real estate located in Allen County, Indiana, to-wit:

'The west twenty (20) feet of Lot One Hundred and Eight (108), and the north eighty-five (85) feet of Lot One Hundred and Seven (107), both in Original Plat of the city of Fort Wayne, being the parcel of land situated on the southeast corner of Berry and Calhoun Streets, in said city, fronting eighty (80) feet on Berry Street and eighty-five (85) feet on Calhoun Street, known as the Tri State Building, or Citizens Trust Building;'

that said real estate was sold to said defendant by The Tri State Loan & Trust Company, to which Company certificates of deposit were originally issued evidencing the unpaid balance of the purchase price of said building, which certificates of deposit became the property of First and Tri-State National Bank and Trust Company of Fort Wayne by virtue of a consolidation between said Tri State Loan and Trust Company and First National Bank of Fort Wayne, and that the certificates of deposit remaining unpaid on June 24, 1932, and evidencing the then unpaid balance of the purchase price of said building, were sold by said First and Tri State National Bank and Trust Company of Fort Wayne to claimant, and that said certificate of deposit of January 2, 1932, in the principal sum of One Hundred and Eighty Thousand Dollars ($180,000.00) represented the then unpaid balance of said purchase price payments on ac-

count of said unpaid balance having been made from time to time after the original purchase of said building; that claimant claims to and does hold a vendor's lien upon said real estate above described, as security for the payment of the balance due upon said purchase price as represented by said certificate of deposit, and does not waive its said vendor's lien nor the right to enforce the same if the balance due upon said certificate of deposit, with interest, is not fully paid, which may be hereafter paid to the creditors of said defendant in this receivership.

"WHEREFORE, claimant prays that it be allowed a claim against the defendant above named on account of said certificate of deposit, in the sum of One Hundred and Eighty-five Thousand Dollars ($185,000.00), together with interest thereon at the rate of four per cent (4%) per annum from June 8, 1932, payable out of any assets or funds now or thereafter in the possession of said receivers, and for all such other and further relief as may be just and proper."

The third paragraph is in substance the same as the first except it is alleged that the real estate in question was subject to a mortgage lien held by the Northwestern Mutual Life Insurance Company to secure an indebtedness in the original amount of $220,000, and the prayer thereof is for $155,000, and its vendor's lien be foreclosed subject to said mortgage and that said real estate be sold subject to the mortgage for the payment of any balance remaining unpaid on said certificate of deposit after the application to the payment thereof of the proceeds of all other properties in the possession of said receivers properly applicable to such payment.

To the first and third paragraphs of claim the defendant filed three paragraphs of answer, the first being a general denial, the third a plea of payment, and the second states and avers a large part of the facts as set

out in appellant's third paragraph of complaint. While the second paragraph of answer states that the appellant held the certificates of deposit for the amount claimed as a vendor's lien on the purchase of certain real estate, it is further alleged that the appellant loaned the Citizens Trust Company a large sum of money and took as collateral certain accounts and bills payable and that by the terms of a collateral agreement it held the same for the loan made and any other obligations that the appellant might hold against the Citizens Trust Company and that by reason thereof the lien of the vendor was waived.

A general claim was allowed the appellant in the sum of $137,520.49, but it was found that the appellant was not entitled to a vendor's lien. It was also decreed that in making a distribution of the assets of the Trust Company to general creditors, the claimant, appellant here, should, before participating in dividends, credit any amount it might realize upon its collateral and receive a dividend on the remainder, and on successive distributions, a like credit should be made on its collections on collateral before any distribution should be made.

A motion was made by the appellant to modify the judgment and decree so that it would direct a distribution to the claimant on the amount of the claim as allowed, and continue to make such distribution until the whole sum was paid by the distribution and collections on the collateral. This motion was overruled.

The errors assigned for reversal are:

(1) That the court erred in overruling appellant's motion to modify the judgment, and,

(2) That the court erred in overruling the motion for a new trial.

In the motion for a new trial it is alleged:

(1) That the court erred in assessing the amount of recovery, the amount assessed being too small;

(2) That the decision is not sustained by sufficient evidence;

(3) That the decision is contrary to law; and,

(4) The fourth reason assigns error in refusing to admit certain evidence.

The claim of a vendor's lien grows out of a sale of certain described real estate by The Tri State Loan and Trust Company, which is owned and occupied in Fort Wayne, Indiana, to the Citizens Trust Company on December 14, 1929. Later The Tri State Loan and Trust Company merged with the First National Bank and later this consolidated bank merged with the appellant which acquired the debt due from the Citizens Trust Company on account of such sale of real estate. Later the appellant and appellee went into the hands of a receiver and the appellant filed a claim for $155,000, the balance due on the purchase price of the real estate, and sought to have a vendor's lien declared and foreclosed against the real estate. It was admitted at the time of trial that there was unpaid on the purchase price of the real estate the sum of $137,376.78.

The contract of sale between The Tri State Loan and Trust Company and the Citizens Trust Company for the sale of the real estate is in part as follows:

"Now THEREFORE, it is agreed by and between the parties hereto, that second party hereby sells, and first party hereby purchases the property first above described, for which it is to pay the sum of Five Hundred Thousand ($500,000.00) Dollars, to be paid by assuming a mortgage of Seventy Thousand ($70,000.00) Dollars now existing on said premises, and by the issuance to second party, of its certificates of deposit for Four Hundred and Thirty Thousand ($430,000.00) Dollars, bearing four per cent (4%) interest and in their usual form.

"The first party agrees to immediately apply for a loan on said first described tract, and out of the proceeds of said loan, pay second party, on account of said certificates, all the sum thus secured in excess of said present Seventy Thousand ($70,000.00) Dollars mortgage on said property. The amount so to be paid in reduction of said certificates, must be at least One Hundred and Fifty Thousand ($150,000.00) Dollars, and said certificates are to be so reduced within six months from this date. The remaining certificates shall be taken up and paid by first party in an amount of Twenty-five Thousand ($25,000.00) Dollars or more of principal each six months.

"Included in said purchase is the personal property now situate in the banking room of the second party, as is set forth and described in the list thereof, attached hereto, marked Exhibit A. All the other personal property may be removed by the second party."

On December 14, 1929, two certificates of deposits were issued to The Tri State Loan and Trust Company, one for $150,000 and one for $280,000, and finally, after payments made, a certificate was issued to the appellant in the sum of $180,000, and it is admitted that on June 8th, 1932, that The Citizens Trust Company was indebted on said $180,000 certificate, with accrued interest, in the sum of $3,120.00. It was also admitted and stipulated that The Citizens Trust Company was also indebted to the claimant upon a promissory note, dated February 17, 1932, on which there was due the sum of $84,085.26, and interest in the sum of $1,634.38, and on a check for $816.20. The note contains the following:

"To secure the payment of this note, and of any other liability or liabilities of the undersigned or either of them to the holder hereof, due or to become due, or that may be hereafter contracted or existing, howsoever acquired by said holder, the undersigned has transferred,

pledged and delivered to the OLD FIRST NATIONAL BANK AND TRUST COMPANY OF FORT WAYNE the following property to-wit:

Mortgage Notes ...........................................$82,602.78
Collateral Notes .......................................... 22,676.00
The market value of which is now............$................

If, in the opinion of the holder hereof, said collateral declined in value, or is insufficient security for said debt, the holder may call for additional security, and if such additional security as is so called for is not furnished, then this obligation and any other obligation hereby secured shall immediately become due and payable on demand. Upon the failure to furnish satisfactory security, or on failure to pay this note, or any of such other liabilities when and as the same are payable hereunder, the holder hereof is fully empowered and authorized to sell any or all of said collateral security and any additions thereto, or substitutions therefor, at public or private sale, with or without notice, and assign and deliver said securities to the purchaser at such sale. The Bank itself, or the holder hereof, may become a purchaser at any such sale. The net proceeds of any sale shall be applied to the payment of said debt, or such part thereof as said Bank or the holder hereof may determine after first deducting all costs and expenses of such sale and the collection thereof, and any costs, expenses or attorney fees at any time incurred in protecting or enforcing said collateral, returning the surplus, if any, to the undersigned, upon demand. Each of us further agree, that any indebtedness due from the holder hereof to either of the undersigned may be applied hereon at any time by the holder hereof in whole or in part payment of this loan."

On the 8th day of June, 1932, there was a balance due on said note of $84,085.26.

It is insisted that the decision of the court in holding

that the balance due on the certificate of deposit was not secured by a vendor's lien was contrary to law. The amount allowed represents the balance due on the original purchase price of $500,000. The sum due and unpaid under said contract of sale was originally represented by certificates of deposit in the sum of $430,000 standing in the name of The Tri State Loan and Trust Company and by transfers and renewals, the balance due under said contract of sale on January 2, 1932, was $180,000 with some accrued interest.

It is not denied by the appellee that Indiana recognizes the right of a vendor's lien. It is the law in this state that where real estate is conveyed and all or part of the purchase price is not paid, the grantor has a vendor's lien upon the real estate so conveyed in the amount of the unpaid purchase price| In the case of *Cassell* v. *Lowry* (1904), 164 Ind. 1, 3, 72 N. E. 640, it is said:

> "A vendor's lien is an ancient rule, and had its origin in the principle of natural justice and equity, which impresses the conscience that it is not fair for a vendee of lands, who gives no other security, to have, as between the parties, the absolute estate until he has fully paid for it. It rests upon the same foundation as the doctrine of subrogation and contribution among sureties. . . . A vendor's lien is not then, founded on contract, but arises by implication of law. . . . It is created by the law solely to secure the payment of purchase money It is therefore an incident of the debt, and, while it can not survive the debt, it continues to exist until the debt is paid or otherwise discharged."

And in the case of *McLaughlin Co.* v. *Laundry Service, Inc.* (1932), 95 Ind. App. 693, 705, 184 N. E. 429, it is said:

> "As a general rule when real estate is sold and deed executed, and at the time of conveyance a part of the purchase price is unpaid, an implied equitable lien arises in favor of the vendor which is superior to any lien thereafter suffered or created."

While the vendor's lien is not in favor in some jurisdictions it is thoroughly recognized in this state and is looked upon with favor, as is well expressed in the case of *Jones* v. *Sewell* (1870), 33 Ind. 1, 4, where is is said:

> "But if the question were an open one, we would not hesitate to decide the same way. We are not in accord with the opinion, sometimes expressed in the reports, that the doctrine of equitable lien for purchase-money is mischievous, and in which it is denounced as a secret lien, an epithet the accuracy or propriety of which is not very apparent when it is remembered that the lien only follows the land in the hands of a purchaser who has paid value and taken a conveyance with notice."

To the same effect is *Smith* v. *Mills* (1896), 145 Ind. 334, 43 N. E. 564, 44 N. E. 362. In *Gerstell* v. *Shirk* (1913), 210 F. 223, 230, in speaking of vendors' liens in Indiana, it is said:

> "This is an Indiana case; and of course the Federal Court in Indiana can not properly declare a vendor's lien or a vendors' lien unless the Supreme Court of the state recognizes the existence of such liens. . . . Both liens have frequently been upheld in that jurisdiction. . . . Indeed, we have found in our investigation of their subject no court more zealous to uphold a standard of righteous conduct between vendor and vendee of land through the compulsive power of equity than the Indiana court."

While the vendor's lien is well recognized in this state, it is also recognized that it may be waived by the acts of the parties, either expressly or impliedly. ■ *McLaughlin* v. *Laundry Service, Inc., supra.* In the case of *Boyd et al.* v. *Jackson et al* (1882), 82 Ind. 525, 529, this court said:

> "While a vendor's lien results, by implication of law, from certain transactions between parties, and not from any agreement between them, and is presumed to exist in all cases in which such a lien is allowed by law, yet whether the lien which the law

has conferred has been in fact continued in existence, is a matter of intention, as manifested by all the circumstances attending each particular case."

When the lien is once established it is presumed to continue until waived by some act of the holder evincing an intention to waive it. As has been said:

"The presumption in favor of this lien continues until it is displaced by satisfactory evidence that the lien has been abandoned or extinguished. The burden is on the vendee to repel the presumption." Perry on Trusts, 1 vol. 16th Ed. 401; *Fisher* v. *Shropshire* (1893), 147 U. S. 133, 13 S. Ct. 201. In the case of *Slide & Spur Gold Mines* v. *Seymour* (1894), 153 U. S. 509, 14 S. Ct. 842, the court said (p. 517):

"An intent to abandon it is not to be presumed, and while, of course, like any other right, it may be abandoned or waived, the evidence of an intent to so abandon or waive should be clear and satisfactory."

And in the case of *Fisher* v. *Shropshire, supra,* it was said (p. 143):

"Undoubtedly, a lien of the character we are considering may be defeated if the grantor or vendor do any act manifesting an intention not to rely on the land for security; but this must be an act substantially inconsistent with the continual existence of the lien, and can not be inferred from the mere fact that the parties may not have contemplated the assertion of the lien in the first instance."

In Overton on Law of Liens, Section 622, it is said:

"To constitute a waiver of the right to the lien there must be some act or omission by the vendor, which actually or impliedly evinces an intention on his part to dispense with the security given him in equity. Therefore, in any question of this character, the point to determine will be, has the vendor by such or such an act or omission so placed his rights in relation to the lands sold, or to the vendee, that

it would be inequitable to sustain this right in his favor."

In the case of *Selna* v. *Selna et al.* (1899), 125 Calif. 357, 362, 58 Pac. 16, it is said:

"The burden of proof is upon the purchaser to establish that in the particular case the lien has been intentionally displaced or waived. If, under all the circumstances, it remains in doubt, the lien attaches. 2 Story Equity Jur. §1224; *Wilson* v. *Lyon*, 51 Ill. 168. . . . And so long as the debt exists, courts will not presume that the lien has been waived, except upon clear and convincing testimony . . ."

The important question presented in the instant case is—Did the vendor waive the lien? The appellee contends that it did by the express language of the contract of sale between The Tri State Loan and Trust Company and the Citizens Trust Company by the following provision of the contract, to wit:

"The first party agrees to immediately apply for a loan on said described contract, and out of the proceeds of said loan, pay second party, on account of said certificates, all the sums thus secured in excess of said present $70,000 mortgage on said property. The amount so to be paid in reduction of said certificates must be at least $150,000 and said certificates are to be so reduced within six months from this date."

The language "to immediately apply for a loan on said premises," implies, of course, that a mortgage was to be placed upon the real estate, but we do not think that this fact would amount to a waiver of the lien. There is no evidence that any mortgage was ever given on the real estate described except the mortgage existing at the time of the sale. The waiver, if any, would only be the extent of the mortgage made and would not take effect unless the mortgage was in fact made. In the case of *Jones* v. *Vantress* (1864), 23 Ind. 533, this court said (p. 533):

"The agreement to receive a mortgage was no

waiver of the lien until the mortgage was executed and delivered."

We do not think the language used amounted to the waiver of the lien. And if a mortgage had been given, the "lien will still attach to the equity of redemption of the vendee, and upon the surplus." Jones on Liens, 2 vol. §1079.

The appellee further contends that the vendor's lien was waived by reason of the fact that the appellee made a loan with the appellant which took a collateral note to secure the payment of the loan. The note introduced in evidence was for $92,884.26. The language used in the collateral note which the appelllee contends constitutes a waiver is as follows:

"To secure the payment of this note, and of any other liability or liabilities of the undersigned or either of them, to the holder hereof due or to become due, or that may be hereafter contracted or existing, howsoever acquired by said holder, the undersigned has transferred, pledged and delivered to the Old First National Bank and Trust Company of Fort Wayne the following property, to wit: Mortgage Notes—$82,602.78, Collateral notes—$22,676.00."

We recognize the rule as laid down in many decisions that as a general rule the taking of other independent security for the purchase money is an implied waiver of the vendor's lien. As said in the case of *Crans et al.* v. *The Board of Commissioners* (1882), 87 Ind. 162, 167:

"It is settled law, we think, that the vendor's equitable lien on real estate sold, as security for the payment of the unpaid purchase-money, will be regarded as waived, abandoned or lost when it is shown that such payment has been secured in some other manner."

See cases cited. As to this proposition, the law is well

settled, but it is governed by the facts of each particular case.

The question now presented is—Did the collateral note and the language contained therein constitute a waiver of the vendor's lien? The only evidence we find in the record as to the value of the collateral is given by the witness F. William Hitzeman. He placed a value of fifty cents on the dollar. This collateral note was taken long after the sale of the real estate. As heretofore stated, the burden of proof is upon the purchaser to establish that in the particular case the lien has been intention-ally displaced or waived, and, if under all the circumstances, it remains in doubt, the lien attaches. The collateral in the instant case was primarily taken to secure the $92,000 note which was made long after the sale of the real estate. The sale of the real estate was not mentioned, nor even considered, as far as the evidence shows, by the parties. It is true that the language used says:

"To secure this payment of this note and of any other liability or liabilities."

It is the usual note given with a collateral agreement, but to say that by the acceptance of such a note under the circumstances as shown in the instant case evinces an intent to waive the lien would in our judgment be unwarranted. To say the least, there can be no question that there is a grave doubt and under the authorities, as heretofore given, where there is a doubt the lien still attaches. It can not be said that the evidence on this proposition shows an intention on the part of the vendor to waive the lien. The intention is not to be presumed and the evidence of an intent to abandon or waive the lien must be clear and satisfactory. *Slide & Spur Gold Mines* v. *Seymour, supra.*

The appellee further contends that there is no vendor's lien in the instant case for the reason that the con-

tract of sale was for both real estate and personal property and that a vendor's lien does not arise in a sale of both real and personal property for one entire sum without any distinct price being set upon the real estate. We recognize the rule as contended for by appellee that:

"When there has been a sale of both real and personal property, under an entire contract for a gross sum, the parties having failed to separate and distinguish the considerations, the court will not undertake to do so. A debt, to come within the principle upon which equity declares a lien for its security, must be contracted in the purchase of real estate."

On the other hand, we also recognize the rule as contended for by appellant that:

"Where land and chattels are sold or exchanged for a sum in gross, but the parties in making such sale or exchange, have placed separate values on each, the court will enforce a vendor's lien against the land for the balance due thereon, although the obligation taken may include the price of both."

The contract in question first provides as follows:

"Now therefore, it is agreed by and between the parties hereto, that said second party hereby sells, and the first party hereby purchases the property first above described, for which it is to pay the sum of $500,000."

The last clause of the contract provides as follows:

"Included in said purchase is the personal property now situate in the banking room of the second party, as set forth and described in the list thereof, attached hereto, marked Exhibit A. All other personal property may be removed by the second party."

The evidence shows that there was no list of personal property marked Exhibit A, attached to the contract of purchase and sale from the Citizens Trust Company.

Judge Heaton, a witness for appellant, was asked the

question—"I will ask you, Judge Heaton, whether or not in the negotiations preceding the execution of this contract and at time of the execution, as to whether there was any agreement as to any specific personal property that was to be transferred or conveyed?" To this question the appellee objected on the ground that any negotiations prior to the execution of the contract are merged therein, and it was without the issues in the cause and that there was no pleadings filed which asked for the reformation of the written contract. The appellant offered to show that Exhibit A was not omitted through error or oversight on the part of either party, but that there never was an agreement between the parties as to any personal property that was to be purchased and that the contract was executed as it was because no agreement was reached at the time of its execution as to the purchase of any specific personal property and that there should be a payment of $500,000 for the real estate and that it was agreed to deed the personal property as The Tri State Loan and Trust Company did not desire to take it, as a gift or gratuity. The objection was sustained. Judge Heaton was also asked, "as to whether or not in the negotiations prior to or at the time of the execution of the contract, there was any agreement between The Tri State Loan and Trust Company and the Citizens Trust Company as to any value that was to be ascribed to the personal property as distinguished from the real estate?" The appellee objected to the question on the same grounds given as to the previous question. The appellant offered to prove by the witness that there was never at any time an agreement between the parties to the contract that any part of the consideration was being paid for the personal property, but that the agreement was that there should be paid the purchase price of $500,000 for the real estate, and that no part of such consideration was being paid for

any personal property that might be left by The Tri State Loan and Trust Company in the building. The objection was sustained to the question.

Exhibit A, which was supposed to contain the description of the personal property described in the contract and hence the contract as to this was clearly ambiguous and incomplete on its face, and, under such circumstances, parol evidence is competent to give effect to the contract. As said in the case of *Ditchey* v. *Lee* (1906), 167 Ind. 267, 275, 78 N. E. 972:

> "It is an elementary proposition that parol evidence is not admissible to impeach or vary the contents of a written contract, or to control its legal effect; but such evidence is competent to explain the circumstances under which the writing was executed, to show the real consideration upon which it rests, to identify the subject-matter where proper reference is made and to give effect to the contract."

We think error was committed in sustaining the objection to the questions and especially so by reason of the nature of the instant case. A court of equity when called upon to enforce a vendor's lien arising out of the sale of land and personal property in gross may hear extrinsic evidence as to the value placed on each by the parties to such sale. *Boyd* v. *Greer* (1918), 70 Ind. App. 77, 123 N. E. 122; *Gerstell* v. *Shirk* (1913), 210 F. 223.

Regardless, however, of the evidence offered by Judge Heaton we are of the opinion that $500,000 was the purchase price of the real estate alone. In the contract of sale, dated December 14, 1929, the real estate is first described and then the price of $500,000 is fixed for the real estate. No mention is made of personal property in fixing the price. The contract speaks of real estate alone in fixing the consideration. Later in the contract, the language, "included in said purchase is the personal property now situate in the

banking room of the second party, as is set forth and described in the list thereof, attached hereto, marked Exhibit A. All the other personal property may be removed by the second party," is used. No Exhibit A was filed. The witness Edward J. Dirser stated that he ordered red tags placed on all personal property that was to be taken over to the First National Bank and that all that was left in the way of furniture was some office desks, tables, chairs, an electric check canceller, some small filing cases, and miscellaneous chairs and stools. The furniture was inconsequential compared to the value of the real estate and we think from the fair interpretation of the evidence was considered as a mere gratuity. The value of the personal property was so unimportant and small as compared to the price of the real estate that the parties did not take its value in consideration, but took only the value of the real estate into consideration when making the contract.

At the time the appellee filed its second paragraph of answer it evidently did not consider that the certificates of deposits were given for anything other than real estate and so admitted in said answer. Part of the answer is as follows:

"These receivers further admit that said certificate of deposit so issued by said Citizens Trust Company to The Tri State Loan and Trust Company of Fort Wayne, Indiana, was originally issued, evidencing the unpaid balance of the purchase price of the building described in the claimant's first paragraph of claim, and that these receivers further say that they admit that said certificate of deposit as originally issued later became the property of The First and Tri State National Bank and Trust Company of Fort Wayne, claimant therein, and these receivers allege that said certificate of deposit by various renewals thereof, was reduced, and said original and renewal certificates of deposit surrendered until the second day of January, 1932, when said Citizens Trust Company issued to said Old-First National Bank and Trust Company of Fort

Wayne the certificate of deposit attached to and made a part of claimant's first paragraph of claim."

Here we see a direct admission that the certificate of deposit was given evidencing the purchase price of the real estate in question, and, "It is the law that ██ admissions in pleadings filed in a cause are taken as true against the pleader on the theory that they are admissions in writing, and they may be used and commented on." *Pullin* v. *First Natl. Bank* (1927), 86 Ind. App. 473, 158 N. E. 579, and cases cited.

The last question to be discussed is the manner or basis on which dividends should be computed.

The court found: "that said claim shall share in any general distribution to general creditors at any time hereafter made, upon the basis of its claim, as hereinabove found, but at the time of each distribution, there shall be credited upon the amount of said claim $137,-520.49, any sums hereafter realized by the claimant upon any of the collateral pledged by the Citizens Trust Company, the defendant and cross-complainant herein, and the balance shall be the basis upon which any distribution or successive distribution shall be made."

It seems that there are four rules established in this country and known respectively as the bankruptcy rule, the Maryland rule, the Illinois rule, and the chancery rule.

The rules are stated as follows:

The bankruptcy rule: A creditor holding collateral and desiring to participate in assets of an insolvent, must first exhaust his security, or credit its value on the claim and prove the balance, surrender the security and then prove for the full claim.

The Maryland rule: The creditor may prove for the full amount, but shall receive dividends only on the amount due him or balance due him at the time distribu-

tions are made after crediting the amounts received from his collateral.

The Illinois rule: The creditor may prove for and receive dividends upon the amount due him at the time of proving his claim, he being required to credit all amounts received by him from collateral prior to that time.

The chancery rule: The creditor may prove and receive dividends upon the full amount of his claim, regardless of any sums received from his collateral, provided that in no event can he received more than in full claim.

The appellant favors the Illinois rule and the appellee seems to be satisfied with either the Illinois or Maryland rule, but appellee believes the Maryland rule to be the most sound and equitable and appellee states that the bankruptcy rule was not adopted in the case of the *Union Trust Co.* v. *Fletcher Trust Co.* (1924), 194 Ind. 314, 142 N. E. 711.

The appellant contends that in this jurisdiction it is open to this court to adopt either one of the foregoing rules except the chancery rule. It is its further contention that as neither party is contending for the bankruptcy rule, its validity is not before this court. We can not agree to this proposition. The basis upon which dividends are to be computed is before us and the court must determine the rule to be followed.

Notwithstanding the position taken by both the appellant and appellee, we feel that this state is bound by the principles of the bankruptcy rule. It is practically so declared in the statutory provisions of our law relating to an assignment for the benefit of creditors and the settlement of insolvent estates. The legislature of 1859, ch. 140, §13, p. 239, Section 17-115 Burns 1933, §762 Baldwin's 1934, provides as follows, relating to an assignment for the benefit of creditors:

"Any part of the property assigned on which there are liens or encumbrances may be sold by the trustee subject to such liens or encumbrances; but in case the trustee should be satisfied that the general fund would be materially increased by the payment of such liens or encumbrances, he shall make applications, by petition, to the judge of the circuit court, for leave so to do, and abide its order in that behalf. Before the holder of any lien or encumbrance shall be entitled to receive any portion of his debt out of the general fund, he shall proceed to enforce the payment of his debt by sale, or otherwise, of the property on which such lien or encumbrance exists; and for the residue of such claim, such holder of such lien or encumbrance shall share pro rata with the other creditors, if entitled so to do by the laws of the state."

Section 6-1812 Burns 1933, §3258 Baldwin's 1934, relating to insolvent estates, is as follows:

"If any portion of the moneys shall have been derived from the sale of real estate, and the same shall have been sold subject to liens, the parties holding such liens shall not be entitled to share in such distribution. If such sale shall have been made to discharge liens of the real estate, the moneys derived from such sale shall be first applied to the payment of such liens in the order of their respective priorities, whether legal or equitable, and if any portion of the debts secured by such liens remain unsatisfied after the application of the purchase-money, the residue shall be entitled to share in such distribution as general debts."

We thus see that in an assignment for the benefit of creditors "before the holder of any lien or encumbrance shall be entitled to recover any portion of his debt out of the general fund, he shall proceed to enforce the payment of his debt by sale, or otherwise, of the property on which such lien or encumbrance exists; and for the residue of such claim, such holder of such lien or encumbrance shall share pro rata with the other creditors . . ." And we further see in the case of insolvent estates that in the case of the sale of real estate to discharge liens

on the real estate, "the money derived from such sale shall first be applied to the payment of such liens in the order of respective priorities, whether legal or equitable, and if any portion of the debts secured by such liens remains unsatisfied after the application of the purchase money, the residue shall be entitled to share in such distribution as general debts." It seems to us that the foregoing sections clearly show that the legislative policy of this state recognizes the bankruptcy rule in the administration of insolvent estates and in assignments for the benefit of creditors. In the instant case, although the banks are in liquidation, and under the control of the banking department as provided in The Indiana Financial Institutions Act of 1933, we see no reason why a different rule in the distribution of dividends should prevail than in the case of insolvent estates and in assignments for the benefit of creditors. In fact, when the original action in the instant case was brought by the State of Indiana on the relation of the Bank Commissioner for the appointment of a receiver of the Citizens Trust Company it amounted in effect to the enforced assignment for the benefit of creditors. When the banking department takes over a bank for the purpose of liquidation it is for all practicable purposes the same as a trustee in the case of an assignment.

In the case of *Citizens & S. Bank* v. *Alexander* (1917), 147 Ga. 74, 92 S. E. 868, L. R. A. 1918B 1021, there is an annotation of all four rules as heretofore set out. The annotation of the bankruptcy rule sets out many provisions of different states relating to insolvent estates and assignments for the benefit of creditors which are almost identical with the provisions of our state as heretofore set out. The provisions are cited by the annotator to show that they have adopted the bankruptcy rule. The provision of our statute, *supra,* relating to an assign-

ment is set out on the theory that Indiana has adopted the bankruptcy rule.

We think that it is not only the legislative policy of this state to follow the bankruptcy rule in the distribution of dividends, but we also think that this court is committed to that rule.

In the case of *Union Trust Co.* v. *Fletcher Trust Co. supra,* the court evidently had in mind the bankruptcy rule although the court was not called upon to pass upon the rule in full and expressly withheld its opinion in passing upon the question as to whether the holder of collateral security, who has not realized from such security at the time of proving his claim or at the time of distribution can be compelled to dispose of such security, or account for its value. In this case the appellant filed a claim for $18,000, but at the time held collateral security upon which it realized $10,000 before distribution and it was held that $8,000 should be the basis for determining appellant's share of the fund for distribution.

The court, in its opinion, said (p. 320) :

"Evidently Congress believed that the rule we are adopting formed the most equitable basis for distribution because, under the Bankruptcy Act, a secured creditor is required to deduct any amount he had realized upon his security."

Thus the court practically said in plain words that it was adopting the bankruptcy rule. The court further said (p. 320) :

"We are persuaded that the practice followed in the case of bankrupts, and in our state in the case of voluntary assignments, and adhered to by the courts in the cases herein cited, that requires the secured creditor to deduct from his claim the amount he has realized from his security and permits him to share in the general estate on the basis of the unpaid balance, is the more equitable rule.
"An additional argument for the adoption of this rule is that it tends to promote uniformity of prac-

tice in the distribution of insolvent estates, since it is followed already in bankruptcy and voluntary assignment cases."

We think it is perfectly clear that the court in the foregoing case adopted the bankruptcy rule in this state and we think it correctly interpreted the legislative policy of this state with reference thereto. This rule should have been followed in the instant case.

The case of *Indiana Natl. Bank* v. *Danner, Rec.* (1932), 203 Ind. 205, 179 N. E. 546, is not inconsistent with the Union Trust Co. case, *supra.* A different question was presented.

The judgment is reversed with instructions to sustain the motion for a new trial in accordance with this opinion.