John V. WHELAN, Appellant,

v.

MIDLAND MORTGAGE CO., a corporation, a/k/a Midland Mortgage Company, Appellee.

No. 49324.

Supreme Court of Oklahoma.

Oct. 24, 1978.

Rehearing Denied March 5, 1979.

**288**

Tom J. Lee, Oklahoma City, for appellant.

Lamun, Mock, Featherly, Baer & Timberlake by Henry F. Featherly, Oklahoma City, for appellee.

DOOLIN, Justice:

We are called upon to decide if the trial court properly granted plaintiff Midland Mortgage Company's motion for summary judgment. The defendant, Whelan, claimed a vendor's lien on the questioned real property. We hold that the motion for summary judgment was improperly granted.

Defendant Whelan owned a five acre tract upon which was developed an apartment complex known as West Wells Apartments. Whelan conveyed to Twilight, who conveyed to Stanley Associates, Inc. (Stanley). Stanley conveyed (deed dated 1–10–73) to Sprague and Eldridge, individuals who together executed a real estate note and mortgage to plaintiff Midland for the sum of $970,000.00. The deed from Whelan to Twilight was dated August 30, 1971, as was Twilight's deed to Stanley. Twilight paid Whelan no consideration but on the date last mentioned, Stanley executed a note to Whelan in the amount of $61,000.00. Sprague and Eldridge's note and mortgage to Midland was dated January 10, 1973.

The note from Stanley in Whelan's favor was also dated August 30, 1971 and showed same to be secured by·a "pledge of stock" of Stanley. The note was signed by Sprague as president of Stanley. Stanley's deed to Sprague and Eldridge was dated January 10, 1973, and the note and mortgage in favor of Midland was of the same date.

Seven months after the note and mortgage in favor of Midland as described aforesaid, Eldridge purporting to act for Sprague and himself, promised to endorse personally the Stanley note to Whelan and to give Whelan a one-third (⅓) interest in the questioned premises after Midland was paid off. The note was not endorsed. Whelan did not receive a ⅓ interest in the project for the mortgage of Midland Mortgage Company was foreclosed. The Stanley stock may be worthless for all accounts.

When the mortgage became delinquent upon the realty, Midland commenced foreclosure proceedings and a suit on the note, naming among other defendants, Whelan, "by reason of any claim he may have against the premises". Such claim was denied to exist but was further referred to as one which might constitute a cloud upon Midland's interests; typical allegation of a quiet title suit.

In due time, Whelan answered and claimed a vendor's lien superior to the mortgage lien of Midland. After voluminous depositions, interrogatories, exhibits, briefs and pleadings, the trial court sustained Midland's motion for summary judgment, thus denying Whelan's lien.

In 42 O.S.1971 § 26, a vendor's lien is said to exist when:

"§ 26. Vendor's lien for price of realty

One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and incumbrancers, in good faith, without notice. R.L.1910, § 3847."

In its order granting summary judgment to Midland and denying the vendor's lien of Whelan, the trial court made these findings:

1. "* * * * Whelan does not have a vendor's lien.
2. If * * * * Whelan had a lien, which he does not, such lien has been waived."

Findings that there was no lien are contra to § 26, for that statute specifically says, "one who sells real property *has* a special or

vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured  *  *  *."

█ The vendor's lien came into existence and attached to the realty the minute Whelan conveyed and surrendered possession, for Whelan was not paid and was unsecured. We are persuaded the vendor's lien continued intact until waived and, to the extent that he was unpaid and as long as he was unsecured. It is an unconverted fact the note recited a pledge. The deposition also showed possession of stock certificates in Whelan. 12A O.S.1971 § 9–203(1)(a)[1] makes the transaction a secured one, so there is no doubt Whelan waived *to the extent* of the value of the pledge under 42 O.S.1971 § 26. From this point the law in Oklahoma remains unsettled for this is a case of first impression.

Whelan conveyed to Twilight, who conveyed to Stanley, yet Stanley signed the note and made the pledge to Whelan. All of these transactions, last described, centered upon August 30, 1971.

Stanley later conveyed to Sprague and Eldridge who executed a real estate mortgage to Midland. After title was in, Sprague and Eldridge, Eldridge purporting to act for Sprague and himself, promised personally to endorse the Stanley note to Whelan and to give Whelan a one-third (⅓) interest in the realty after Midland was paid off. We know that the note was not endorsed because a copy is a part of the record. We know Whelan did not receive a ⅓ interest in the project for Midland's mortgage was foreclosed.

The California Supreme Court in 1910, *Royal Consol. Mining Company v. Royal Consol. Mines (California) Ltd. et al, 157 Cal. 737, 110 P. 123, 128 (1910)* in passing on the identical statute as 42 O.S.1971 § 26 holds the lien is not dependent upon the statute. That court said the lien is one

recognized by courts of chancery and " 'is a simple equity raised by courts for the benefit of vendors of real estate.' (citations omitted). Accordingly, where there is nothing to indicate an intention one way or the other, 'the lien is presumed to exist' ".

█ If the lien is presumed to exist and Whelan so states and cries loudly; what evidence of a waiver must be considered? The Supreme Court of the United States in *Slide & Spur Gold Mines v. Seymore 158 U.S. 509, 516, 14 S.Ct. 842, 844, 38 L.Ed. 802 (1894)* states:

"So, in *Refeld v. Woodfolk,* 22 How. 318–327, 63 U.S. 318, 16 L.Ed. 370 this court said: 'A court of chancery regards the transfer of real property in a contract of sale, and the payment of the price, as correlative obligations. The one is the consideration of the other; and the one failing leaves the other without a cause.' An intent to abandon it is not to be presumed, and while, of course, like any other right, it may be abandoned or waived, the evidence of an intent to so abandon or waive should be *clear and satisfactory*." (Citations omitted, emphasis supplied).

The evidentiary material in this case is not clear and convincing; trial should proceed to resolve these issues.

The unperformed promises of endorsement and conveyance were not considered, for the trial court says, "we never believed Whelan had a lien it just didn't exist". In *Hinkel v. Crowson, 188 Cal. 378, 256 P. 479, 481 (1927)* that court said:

"Where the vendee has agreed to give but has not given security for the purchase price of real property, the price 'remains . . . unsecured otherwise than by the personal obligation of the buyer,' and the seller of the 'property has a vendor's lien thereon' for the price thereof. Civ.Code § 3046."[2]

1. 12A O.S.1971 § 9–203(1)(a) provides: "Enforceability of Security Interest; Proceeds, Formal Requisites.—(1) Subject to the provisions of Section 4—208 on the security interest of a collecting bank and Section 9—113 on a security interest arising under the Article on Sales, a

security interest is not enforceable against the debtor or third parties unless
  (a) the collateral is in the possession of the secured party."
2. For citation that section 3046 of the California Civil Code is the same as 42 O.S.1971 § 26,

Midland argues the fact a pledge was taken of the Stanley stock and that Stanley contemporaneously with the Whelan-Twilight-Stanley transactions executed a mortgage to Fidelity Bank shows that Whelan's lien was junior to Midland's claim. Midland cites *Finlayson v. Waller, 64 Idaho 618, 134 P.2d 1069 (1943)* as supporting its view.

In *Finlayson,* the Idaho Court may have correctly found that between the vendor's lien claimant and an *immediate* and *contemporaneous mortgagee,* the vendor lost the priority of his lien by reason of his contract with the vendee wherein the vendee agreed to pay the vendor from the proceeds of the mortgage. The Idaho Court observed at page 1072:

"It appears the conveyance of the apartment house property from appellant to the Wallers was made for the purpose of enabling them to mortgage the property so they might acquire funds to pay appellant the compensation as agreed in the contract. Such facts are inconsistent with any intention to retain an implied vendor's lien, and therefore a waiver thereof.[3]

"It is therefore apparent the court properly granted the bank's motion for nonsuit."

The facts of the *Finlayson* case are not the same as the instant case. Midland is not in the same position as the mortgagee therein, for subsequent to the transactions of August 30, 1971, (Whelan to Twilight to Stanley) and this on August 10, 1973, seven months after Sprague and Eldridge had the record title in themselves after recording the Stanley deed on January 10, 1973, Sprague and Eldridge acknowledged the existence of Whelan's lien by a letter (August 10, 1973). The letter increased or "sweetened" the security of the Stanley pledge. We are convinced that the trial court did not consider these facts in passing on the motion for summary judgment.[4] The trial court held Whelan had no lien. We hold the pledge created a security interest and effected a waiver of Whelan's lien to the extent of the value of the Stanley stock as of that date; and that a fact question remains and evidence is necessary to establish the value of the missing endorsement and promise of conveyance.

The existence of a vendor's lien may be an anomaly, an anchronism or a dinosaur under today's lending practices or in its real estate markets. Nonetheless, 42 O.S.1971 § 26 et seq. exists, cannot be ignored and must be dealt with realistically.

█ Whelan refers us to the case of *Old First National Bank & Trust Company v. Scheuman, 214 Ind. 652, 13 N.E.2d 551, 119 A.L.R. 1165 (1938).*[5] This case, distinguishable but similar to the instant one, concerns a vendor's lien on realty running through mergers and consolidations of several banks. It is further complicated by receivership. The Indiana Supreme Court made these comments which we would adopt:

"A vendor's lien is an ancient rule, and had its origin in the principle of natural justice and equity, which impresses the conscience, that it is not fair for a vendee of lands, who gives no other security, to

see *Royal Consol. Mining Company v. Royal Consol. Mines (Calif.) Ltd. et al.,* 157 Cal. 737, 110 P. 123, 128 (1910).

3. Cf. *Old First National Bank & Trust Company, Appt., v. Edward F. Scheuman et al.,* 214 Ind. 652, 13 N.E.2d 551, 119 A.L.R. 1165 (1938) which indicates the Indiana Court would make the waiver turn upon the particular facts of each individual case weighed with all others.

4. We do not know if Stanley had paid Fidelity Mortgage as of August 10, 1973, but presumably such a mortgage has been paid for Midland's suit in foreclosure does not name Fidelity as a defendant.

5. The author or editors of the annotation appearing 119 A.L.R. 1181 arrive at this conclusion: "While, as above noted, the actual taking by a vendor of other security for the purchase money is generally regarded as an implied waiver of the vendor's lien, yet, in the absence of clear proof to the contrary, a mere agreement that security will be taken is not regarded as sufficient of itself to effect such a waiver where the agreement is never fulfilled and the vendee fails to furnish the security agreed on. (Citations omitted).

have, as between the parties, the absolute estate until he has fully paid for it. It rests upon the same foundation as the doctrine of subrogation and contribution among sureties. . . . A vendor's lien is not, then, founded on contract, but arises by implication of law. . . . It is created by the law solely to secure the payment of purchase money. It is therefore an incident of the debt, and, while it cannot survive the debt, it continues to exist until the debt is paid or otherwise discharged."

.    .    .    .    .

"While the vendor's lien is not in favor in some jurisdictions, it is thoroughly recognized in this State . . . We are not in accord with the opinion, sometimes expressed in the reports, that the doctrine of equitable lien for purchase-money is mischievous, and in which it is denounced as a *secret lien,* an epithet the accuracy or propriety of which is not very apparent when it is remembered that the lien only follows the land in the hands of a purchaser who has paid value and taken a conveyance *with notice.*" (Emphasis ours).

.    .    .    .    .

"While a vendor's lien results, by implication of law, from certain transactions between parties, and not from any agreement between them, and is presumed to exist in all cases in which such a lien is allowed by law, yet whether the lien which the law has conferred has been in fact continued in existence, is a matter of intention, as manifested by all the circumstances attending each particular case."

.    .    .    .    .

"When the lien is once established, it is presumed to continue until waived by some act of the holder evincing an intention to waive it. As has been said: 'The presumption in favor of this lien continues until it is displaced by satisfactory evidence that the lien has been abandoned or extinguished. The burden is on the vendee to repel the presumption.' " (Citations omitted).

.    .    .    .    .

"To constitute a waiver of the right to the lien there must be some act or omission by the vendor which actually or impliedly evinces an intention on his part to dispense with the security given him in equity. . . ."

Whelan argues that summary judgment should be denied if under the evidence reasonable men might differ or reach different conclusions, *Runyon v. Reid,* 510 P.2d 943, 58 A.L.R.3d 814 (Okl.1973); *Smith v. American Flyers, Inc.,* 540 P.2d 1212 (Okl.App. 1975). We agree, a review of Whelan's pleadings, answers to interrogatories, and his depositions reveals, although the facts are not greatly in controversy, the conclusions to be drawn therefrom, by reasonable men, are.

■ The trial court's order sustaining the motion of Midland for summary judgment found, "neither the plaintiff (Midland) or any of its officers, agents or employees had knowledge of a vendor's lien." In view of what we have said herein concerning vendor's liens, we hold such a finding was premature and unnecessary for the trial court basically found against the existence of a lien. We express no opinion as to whether Midland was an "incumbrancers, in good faith, without notice" under § 26; that question must await trial.

REVERSED AND REMANDED FOR TRIAL.

HODGES, C. J., and WILLIAMS, IRWIN, SIMMS and HARGRAVE, JJ., concur.

LAVENDER, V. C. J., and BERRY and BARNES, JJ., dissent.

BARNES, Justice, dissenting:

I respectfully dissent from the Majority Opinion in this case. Although I would agree with the Court's holding that Mr. Whelan, by virtue of the statute, had a vendor's lien, I disagree with the Court's analysis with respect to waiver of that lien.

Title 42 O.S.1971, § 26, provides that the seller of real property has a special or vendor's lien for "so much of the price as remains unpaid *and unsecured* . . ." In the case before us, the entire debt was secured by the pledge of stock. The fact that the stock turned out to be relatively worthless is immaterial. The material fact is how much of the debt the pledge was meant to secure, not how much the pledged property is worth. See 77 Am.Jur.2d 572, "Vendor and Purchaser", § 410, which states:

> "As a general rule, the taking of other independent security for the purchase money does operate as an implied waiver of the lien, and the fact that said security proves worthless is immaterial."

I believe that the emphasis, in the Majority Opinion, placed on the value of the collateral was erroneous, and for that reason I must dissent.

I am authorized to state that LAVENDER, V. C. J., and BERRY, J., concur in the views herein expressed.