## WOODY v. FISLAR ET AL.

VENDOR AND PURCHASER.—*Vendor's Lien.*—*Innocent Purchaser.*—A. conveyed certain land to B., receiving for an unpaid part of the purchase-money the promissory note of the latter; B. in like manner conveyed such land to C., receiving his promissory note for an unpaid amount of the purchase-money, equal to that due from B. to A.; B. having, for a valuable consideration, transferred C.'s note to D., the latter, while still having an opportunity of returning such note to B., if subject to any defence, called upon C., who informed him that his note was valid and would be paid; and B. having become insolvent, A., whilst both such notes remained unpaid, brought suit against B., C. and D., to enforce a lien against such land, for his unpaid purchase-money, of which C. and D. had had no notice, prior to the transfer of C.'s note to D.

*Held*, that A. is not entitled to such lien.

From the Jackson Circuit Court.

*D. H. Long* and *B. E. Long*, for appellant.

*F. Emerson, B. H. Burrell* and *W. K. Marshall*, for appellees.

WORDEN, J.—Action by the appellant, against the appellees, to enforce a vendor's lien upon certain real estate.

Such proceedings were had as that judgment was rendered against the plaintiff, who appeals to this court.

Without taking up space in stating how the facts were presented, we may state that the following are the material facts of the case, as shown by the record.

" The plaintiff, Woody, sold and conveyed certain land to Beem, a part of the purchase-money for which was left unpaid, for which Beem executed to Woody his promissory note. Beem afterwards sold and conveyed the land to Fislar, the latter paying a part of the purchase-money, and executing to Beem two promissory notes for the residue. The notes thus executed by Fislar to Beem were sufficient in amount to pay the remaining purchase-money due from Beem to Woody, for which Beem had executed to Woody his note, as before stated. Afterwards, Beem, for a valuable consideration, transferred the notes thus executed to him by Fislar, to Smith. Smith, after he had thus taken the notes from Beem, and while he had an opportunity of returning them to Beem if they were not all right, saw Fislar, and made inquiry of him about the notes, and the latter informed him that they were all right and would be paid as soon as due, and Smith retained them. Up to this time neither Fislar nor Smith had any notice whatever that Beem had not fully paid Woody for the land, or that the latter had, or claimed to have, any lien upon it for purchase-money. Woody some time afterwards notified Fislar of his supposed lien upon the land for the unpaid purchase-money, intimating to him that he should retain enough of the purchase-money due from him to Beem to meet the plaintiff's claim. Beem is insolvent, and has removed from the State."

These are the essential facts in the case, as gathered from a confused record, in respect to which there is, we believe, no dispute; and the question arises, whether upon them the plaintiff, Woody, is entitled to a lien upon the land for the unpaid purchase-money due him from Beem.

Upon as careful a consideration as we have been able to bestow upon the case, we have come to the conclusion that he is not entitled to the lien.

The right which a vendor has to a lien upon land sold and conveyed by him, for the purchase-money, is but an equitable right, and one which ought not to exist or be enforced when it would work wrong and injustice. It was said by MARSHALL, C. J., in the case of *Bayley* v. *Green-leaf*, 7 Wheat. 46:

"It is a secret invisible trust, known only to the vendor and vendee, and to those to whom it may be communicated in fact. To the world the vendee appears to hold the estate, divested of any trust whatever; and credit is given to him, in the confidence that the property is his own in equity, as well as law. A vendor relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessary to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien."

If the lien can be enforced against the land, then the amount of it must necessarily be lost by either Fislar or Smith, inasmuch as Beem is insolvent. If Fislar could not make defence to the notes given by him to Beem, thus transferred to Smith, then he would have to pay off the the plaintiff's claim, as well as the notes given to Beem and held by Smith. This would be so manifestly unjust, that the statement of the proposition carries with it its own condemnation.

The injustice of thus compelling Fislar to pay twice is not palliated by the fact that he made such statements to Smith, in reference to the notes, as would estop him to set up any defence to them in the hands of Smith, if the statements made by him would thus estop him.

At the time Smith applied to him for information concerning the notes, Fislar had no knowledge whatever of the plaintiff's supposed claim, and was guilty of no wrong

or negligence in informing him that the notes were all right and would be paid. The *laches*, if there were any, were on the part of the plaintiff, in not sooner giving notice of his claim. On the other hand, if Fislar would make defence to the notes in the hands of Smith, the enforcement of the supposed lien would not injure him. But this would be doing gross injustice to Smith. Smith purchased the notes in good faith, for value, and retained them after having exercised the caution and prudence of making inquiry of Fislar concerning them, and learning from him that they were all right. To deprive him of the avails of the notes purchased under these circumstances, in order to meet a lien of which neither he nor Fislar had any notice at the time of the transaction, would be inequitable and unjust.

This view is fully sustained by the case of *Moore* v. *Holcombe*, 3 Leigh, 597. There, Hancock had sold land to Moore, a part of the purchase-money remaining unpaid. Moore sold the land to Franklin, and took Franklin's bonds for the purchase-money. Moore assigned Franklin's bonds to Murrell & Meem, for a valuable consideration. At the time of Franklin's purchase he had no notice of any debt due from Moore to Hancock. It was held, that Hancock could not enforce any lien upon the land for his purchase-money. TUCKER, P., in delivering his opinion said: " Where the vendee of land still retains the estate it is clearly liable for the whole of the unpaid purchase-money by virtue of the vendor's lien. Where he has sold to a sub-vendee, and the title has been made by him, and the money paid before notice of the original vendor's lien, the sub-vendee holds discharged of that lien. Where, however, a part of the purchase-money is unpaid by the sub-vendee, the land in his hands is liable for that unpaid portion, but for no more. The equity is, that he shall pay to the original vendor whatever he himself yet owes to his own vendor. If he owes any thing, he, and his land, are discharged, upon his paying up that to the orig-

inal vendor's demand; and if he owes nothing, neither himself nor his land is in any wise responsible.

" Try this case by these principles. Was any thing due from Franklin to Moore (when he received notice of Hancock's claim) which equity demanded that he should pay over to Hancock instead of Moore? Nothing was due. His bonds, indeed, had been due to Moore, but Moore had sold them, for value, to persons who knew nothing of the vendor's pretensions. From the moment of that sale, Franklin ceased to owe Moore any thing. He became the debtor of the assignees; and as he owed Moore nothing, he could be liable to Hancock for nothing, as has been already shewn.

" It is true that assignees take every bond subject to the obligor's equity against the obligee; but I have yet to learn, that they take subject to an unknown equity of a stranger against the obligee."

The judgment below is affirmed, with costs.