**Joseph I. ASKREN, Plaintiff–Appellant,**

v.

**21ST STREET INN and Third Savings and Loan Company, Defendants–Appellees.**

No. 92–1759.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1993.

Decided Feb. 4, 1993.

Dennis L. Thomas, Jr. (argued), Thomas & Ellis, Indianapolis, IN, for Joseph I. Askren.

Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for 21st Street Inn.

Thomas G. Stayton, James M. Matthews (argued), Baker & Daniels, Indianapolis, IN, for Third Sav. & Loan Co.

Before BAUER, Chief Judge, and POSNER and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

This is a diversity suit to enforce a vendor's lien. We can simplify the facts. The plaintiff, Askren, owner of a two-acre parcel of land in Indianapolis, made a contract with Cardinal Industries, a hotel chain, to sell the parcel to Cardinal for $250,000. Half of the purchase price was to be paid in cash to Askren at the closing and the other half was to be paid in equal installments, together with interest at 9 percent a year, on the first and second anniversaries of the closing. The agreement was on a printed form, but a clause had been typed in which stated that Askren's "Security [for payment of the balance of the purchase price is] to be a Cardinal ... promissory note." At the closing, Askren received $125,000 in cash plus a promissory note the terms of which were identical to those specified in the agreement of sale. Cardinal borrowed a considerable sum of money to build a hotel on the parcel it had bought. The loan was secured by a mortgage on the real estate and its improvements. The loan and mortgage were later assigned to the principal defendant in this case, Third Savings and Loan Company. Cardinal went broke and failed to make either of the installment payments that it owed Askren, who brought this suit to foreclose his implied land vendor's lien on the parcel. The district judge granted summary judgment for the savings and loan company on the ground that Askren had waived his lien, and dismissed the suit, precipitating this appeal.

Indiana law, which the parties agree governs the substantive issues in this suit, creates a vendor's lien whenever someone sells real estate and is not paid in full at the time of the closing, that is, at the time the real estate is conveyed. *Old First National Bank & Trust Co. v. Scheuman*, 214 Ind. 652, 668, 13 N.E.2d 551, 558 (1938); *Lincoln National Life Ins. Co. v. Overmyer*, 530 N.E.2d 784, 786 (Ind.App.1988); *Prell v. Trustees*, 179 Ind. App. 642, 386 N.E.2d 1221, 1227 (1979). Whenever title passes before payment is completed, the seller is in effect lending money to the buyer; and Indiana law gives the seller an automatic security interest in the real estate, to secure this loan—gives him, in other words, a purchase-money mortgage. The lien is created by the law, not by the contract of sale, and it need not be recorded in order to be effective. It was not recorded in this case, or mentioned in the contract, which is why we called it an implied lien.

*Why* the law should create a lien in these circumstances is obscure. The origin of the doctrine of the vendor's land lien is equitable, and in turn Roman; the principle

---

**40**

is said to be that "a thing may well be deemed to be unconscientiously obtained, when the consideration is not paid." 3 *Story's Equity Jurisprudence* § 1626 at p. 263 (W.H. Lyon, Jr., ed., 14th ed. 1918). Well, of course, but the issue comes up only when the vendor is contesting with a third party, such as the mortgagee in this case, rather than with the defaulting vendee. The doctrine arbitrarily advances the vendor over the vendee's other creditors, and complicates real estate financing. It has been abolished in a number of states, but not in Indiana. All this is an aside, however. Although the lien is created by the law, it is created for the seller's benefit, so he can waive it. *Old First National Bank & Trust Co. v. Scheuman, supra,* 214 Ind. at 668, 13 N.E.2d at 558; *Lincoln National Life Ins. Co. v. Overmyer, supra,* 530 N.E.2d at 786. The only question we need decide is whether the evidence adequately establishes that Askren did waive his implied land vendor's lien.

The contract of sale states that the security for the buyer's performance, that is, for the completion of payment, is a promissory note by Cardinal Industries: "Security [is] to be" Cardinal's note. If the security was to be the note, it was not to be the land. "As a general rule the taking of other independent security for the purchase money is an implied waiver of the vendor's lien." *Old First National Bank & Trust Co. v. Scheuman, supra,* 214 Ind. at 668, 13 N.E.2d at 558; cf. *Rader v. Dawes,* 651 S.W.2d 629, 633 (Mo.App.1983). Askren argues that, so interpreted, the clause about security was illusory, since if Cardinal defaulted he could always sue on the agreement of sale—what would a note add? Well, something. Promissory notes are generally assumed to be easier to sue on than regular contracts, *Burrill v. Commissioner,* 93 T.C. 643, 662 (1989), though the basis for this belief is obscure, at least in a state such as Indiana which has abolished "confession of judgment" clauses, a device for erasing the promisor's procedural rights. Ind.Code § 34-2-25-1. More important, promissory notes standardly provide for awarding the promisee his attorney's fees and other costs of enforcing

the note—though Cardinal's note to Askren did not. Most important, such a note can be negotiated, if the promisee wants his money before it is due, to a holder in due course who will not be subject to the defenses the promisor might have had to a suit by the promisee. UCC § 3–305(b). This feature, not exploited by Askren, be it noted, makes a promissory note almost as good as cash—provided, of course, that the promisor is solvent. The Supreme Court of Indiana did not doubt, in the *Scheuman* case, that a note could be security in lieu of the real estate, though the court held it was not in that case; for one thing it had been given long after the conveyance, apparently to secure a later loan—not the loan implicit in conveying the real estate before it had been completely paid for. *Old First National Bank & Trust Co. v. Scheuman, supra,* 214 Ind. at 668, 13 N.E.2d at 558.

Askren also points to a clause which states that the sale agreement shall survive, after the conveyance of the property is completed, until all the terms and conditions of the agreement have been performed. The agreement is seven pages of fine print and imposes numerous obligations on the parties. All that the survival clause means is that if any of these obligations have not been met by the closing, they remain enforceable. So, for example, Cardinal's personal obligation to complete paying for the parcel survived the transfer of the parcel from Askren to it. This may seem too obvious a function to assign to the survival clause. That clause, however, may itself be a survival—of the era when the doctrine of "merger," now however greatly curtailed, extinguished all contractual obligations in the sale agreement that were not carried over into the deed. Roger A. Cunningham, William B. Stoebuck, and Dale A. Whitman, *The Law of Property* § 10.12 at pp. 696–98 (1984).

Askren argues that a property right should not lightly be deemed forfeited. An equal and opposite maxim is that invisible encumbrances should not lightly be deemed subsistent. There is no written evidence of Askren's so-called lien. It is neither in the

sale agreement nor anywhere else. Askren did not record the lien until Cardinal declared bankruptcy—he did not until then even know that he *had* a vendor's lien. The principal defendant is an Ohio lender, and Ohio has made implied vendors' liens ineffective against mortgagees, Ohio Rev. Code. § 5301.26, so the lender was hardly likely to spot the invisible lien when it took the assignment of the mortgage. Well, it did business in Indiana, so should have known better. But legal doctrines that confer property rights on people who neither possess the property openly nor have a recorded paper title should be interpreted cautiously in order to facilitate sale and financing transactions, and persons claiming rights under such doctrines should be encouraged to record their claims. *United States v. Speers*, 382 U.S. 266, 275–76, 86 S.Ct. 411, 416–17, 15 L.Ed.2d 314 (1965); *Krauss Bros. Lumber Co. v. Dimon Steamship Corp.*, 290 U.S. 117, 125, 54 S.Ct. 105, 107–08, 78 L.Ed. 216 (1933); *Security Warehousing Co. v. Hand*, 143 Fed. 32, 41 (7th Cir.1906), aff'd, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117 (1907); *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 558–59 n. 13 (2d Cir.1976). So the Indiana Supreme Court stated with specific reference to implied vendors' liens more than a century ago. *Woody v. Fislar*, 55 Ind. 592, 594 (1877). While that court later denied that the implied vendor's lien was "not in favor" in Indiana, *Old First National Bank & Trust Co. v. Scheuman*, *supra*, 214 Ind. at 665, 13 N.E.2d at 556, we do not think the court meant to throw all caution to the winds and wrap real estate lending in a fog of uncertainty.

There is no injustice in extinguishing Mr. Askren's lien. His lawyer admitted at oral argument that his client didn't know he was retaining such an interest when he sold the parcel, and no one suggests that Cardinal paid him less in recognition of the valuable interest that he claims to have retained. The savings and loan company that has had to foreclose on the parcel and its improvements had no reason to suppose that the parcel was encumbered by a prior lien. But the equities of the case are neither here nor there. The waiver of the land vendor's implied lien was clear. Askren had no lien to foreclose on, and the judgment dismissing his foreclosure suit is therefore

AFFIRMED.