**WACHOVIA FINANCIAL SERVICES, INC., Appellant–Plaintiff,**

v.

**DUNE HARBOR, LLC, Cathryn Brant–Tullidge, Jeffrey W. Brant, James E. Brant, William J. Brant and Associates, L.P., First National Bank of Illinois, Unknown Owners, Non–Record Claimants, and Lefty's Co–Ho Landing, Inc., Appellees–Defendants.**

No. 64A03–1008–MF–415.

Court of Appeals of Indiana.

April 26, 2011.

D. Lucetta Pope, Scott J. Fandre, Larry E. Latarte, Baker & Daniels LLP, South Bend, IN, Attorneys for Appellant.

John E. Hughes, Kevin G. Kerr, Hoeppner Wagner & Evans LLP, Valparaiso, IN, Attorneys for Appellees.

## OPINION

ROBB, Chief Judge.

*Case Summary and Issue*

This case involves lenders who contend priority for their liens in the foreclosure of a failed real estate development project in Portage, Porter County, Indiana. Wachovia Financial Services, Inc. ("Wachovia") appeals from a trial court's summary judgment in favor of Lefty's Co–Ho Landing, Inc. ("Lefty's"). Wachovia raises four issues for our review, of which we find the first dispositive and restate as: whether a vendor's lien was created in favor of Lefty's and in force when Wachovia recorded its mortgages. Concluding that a genuine issue of material fact remains as to whether a vendor's lien, if created, was in force when Wachovia recorded its mortgages, we reverse and remand.

*Facts and Procedural History*

In 2002, Lefty's owned an undeveloped tract of land (the "Property") and discussed its development with Abonmarche Consultants Inc. ("Abonmarche") and A.G.I. LLC, an affiliate of Abonmarche. Lefty's owned another ten acres of realty ("Lefty's Retained Property") south of the Property, separated by a one hundred fifty foot wide parcel that contains gas and electric transmission lines and is owned by Northern Indiana Public Service Company. The Old Chicago to Detroit Road, traversing a strip of the Property, is the only means of access to Lefty's Retained Property.

In September 2002, Lefty's and Abonmarche executed a purchase option, and on February 6, 2003 replaced it with a "Restated and Extended Option to Purchase" (the "Restated Option").[1] Appellant's Appendix at 275. The Restated Option grants Abonmarche the right to purchase the Property from Lefty's for $1,000,850[2]

1. The Restated Option expressly nullified the initial purchase option.

2. The Restated Option includes conflicting statements of the purchase price: "One Million Eight Hundred and Fifty Dollars ($1,850,000.00)." *Id.* at 275. In accordance with the traditional rule to defer to the statement of an amount in words over an amount in numbers, we discuss the purchase price as $1,000,850. *See St. Paul Fire & Marine Ins.*

and other specified "[a]dditional [c]onsideration." *Id.* at 276.

In October 2003, after extension of the Restated Option, Abonmarche assigned the Restated Option with Lefty's consent to Dune Harbor Investments, L.L.C. ("DHI"), another affiliate of Abonmarche. On October 31, 2003, DHI exercised the Restated Option, closed on the purchase, and executed an Addendum to the Restated Option (the "DHI Addendum"), which Lefty's drafted. The DHI Addendum states that Abonmarche assigned the Restated Option to DHI and provides for the survival of commitments "which have not and can not [sic] be satisfied at closing." *Id.* at 285. Neither the Restated Option nor the DHI Addendum were recorded with the Porter County Recorder.

Also on October 31, 2003, Lefty's executed a corporate warranty deed evidencing its conveyance of the Property to DHI "[s]ubject to" a "Vendor's Lien set forth in that certain [Restated Option] dated the 26th [sic] day of February, 2003, as further amended, by and between the Grantor and Grantee's assignee." *Id.* at 296–97. On January 6, 2004, the warranty deed and a Notice of Additional Covenants and Commitments ("Notice of Covenants") were recorded with the Porter County Recorder. The Notice of Covenants states—without meaningful further detail—that the "covenants and commitments created in the [Restated Option] shall run with the land. . . ." *Id.* at 288.

In December 2004, DHI sold the still-undeveloped Property to Dune Harbor LLC ("Dune Harbor") without Lefty's consent. Through the purchase agreement, Dune Harbor assumed DHI's duty, if any, under the Restated Option "to pay a $2,000 development fee for each assigned residential unit conveyed to a third party for occupancy." *Id.* at 341.

Dune Harbor began development of the Property, including platting it into lots for development, obtaining approval from the City of Portage Planning Commission, and recording a Planned Unit Development Plat in the City of Portage with the Porter County Recorder. Dune Harbor then built and sold at least eleven residential units, and Lefty's was paid at least $22,000 pursuant to Dune Harbor's above-mentioned assumed duty.[3]

On November 2, 2005, for Wachovia's loan of $17,777,922, Dune Harbor executed a Development Note and a Development Mortgage, which included a Construction Mortgage, Security Agreement, and an Assignment of Rents and Leases and Fixture Filing. On November 28, 2005, Wachovia recorded the Development Mortgage with the Porter County Recorder.

On December 20, 2005, for Wachovia's additional loan of $7,000,000, Dune Harbor executed a Vertical Note and a Vertical Mortgage, including a Construction Mortgage, Security Agreement, and an Assignment of Rents and Leases and Fixture Filing. On March 15, 2006, Wachovia recorded the Vertical Mortgage with the Porter County Recorder.

Dune Harbor then failed to make principal or interest payments on or before December 31, 2007, under the Vertical Loan

---

Co. *v. State Bank of Salem,* 412 N.E.2d 103, 111 (Ind.Ct.App.1980) ("The theory is that a man is more apt to commit an error with his pen in writing a figure than in writing a word, and that the words ought to be deemed the better and more solemn statement, and therefore should govern.") (citation omitted).

However, this is not an issue on appeal and neither party has addressed this discrepancy; therefore, we use the number as a reference only.

3. The designated evidence suggests that a title company paid Lefty's.

Documents, and also failed to make principal or interest payments on or before November 2, 2008, under the Development Loan Documents. As a result, Dune Harbor defaulted on its loans from Wachovia, and the Development Mortgage and Vertical Mortgage grant Wachovia the right to foreclose its liens on the Property.

On February 17, 2009, Wachovia filed a three-count complaint seeking to foreclose on the Property. Counts one and two refer to Wachovia's two recorded mortgages. As to these counts, Cathryn Brant–Tullidge, Jeffrey W. Brant, James E. Brant, and William J. Brant & Associates, L.P. (collectively "Additional Loan Guarantors"), Wachovia, and Dune Harbor stipulated to an entry of judgment against Dune Harbor in the amount of $17,053,654.77 and foreclosure of Wachovia's mortgages. In count three of its complaint, Wachovia sought judgment against the Additional Loan Guarantors for their surety of loans from Wachovia to Dune Harbor.

Lefty's intervened by filing a cross-claim and counterclaim requesting an adjudication of rights as to a vendor's lien and seeking foreclosure on that lien. This cross- and counterclaim also raises claims for breach of contract, breach of fiduciary duty and constructive fraud, misrepresentation, tortious interference with business contracts, damage to personal property, declaratory judgment for access to Lefty's Retained Property, and punitive damages.

The trial court entered summary judgment to foreclose and order a sheriff's sale of the Property and for Wachovia and against Dune Harbor and the Individual Loan Guarantors in the amount of $16,527,726.02,[4] including loan principal, interest, late charges, and attorney and appraisal fees.[5] The trial court also entered judgment in favor of Lefty's and against Dune Harbor for the amount remaining on Lefty's purported vendor's lien, $902,000, plus interest and attorney fees, for a total of $1,232,416.40.[6] The trial court further ruled that Lefty's judgment lien has priority over Wachovia's judgment lien. Wachovia now appeals. Additional facts will be supplied as appropriate.

*Discussion and Decision*

### I. Standard of Review

On appeal of a summary judgment order we are bound by the same standard as the trial court, and we consider only those materials which the parties designated at the summary judgment stage. *Estate of Pflanz v. Davis,* 678 N.E.2d 1148, 1151 (Ind.Ct.App.1997). Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The moving party bears the burden of showing no genuine issue of material fact in reliance upon specifically designated evi-

---

4. The trial court initially entered judgment in the amount of the stipulation, $17,053,654.77, but amended its order to $16,527,726.02 following Wachovia's motion to amend.

5. Wachovia notes that the trial court "inexplicably held [the Individual Loan Guarantors] 'personally liable.'" Brief of Appellant at 5 n. 2 (citation omitted). However, no party has argued on appeal for our review of this portion of the trial court order, and we therefore decline to do so specifically.

6. First National Bank of Illinois has been served with a summons as a defendant in Wachovia's foreclosure action, but did not appear in the trial court nor file an appellate brief. No party on appeal has raised any issue or argument regarding the First National Bank of Illinois, and we limit our review accordingly.

dence. *Pflanz,* 678 N.E.2d at 1150. If the moving party satisfies its burden, the burden shifts to the non-movant to set forth specifically designated evidence showing there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute, or where undisputed facts are capable of supporting conflicting inferences on such an issue. *Briggs v. Finley,* 631 N.E.2d 959, 963 (Ind.Ct.App.1994), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Gen. Accident Ins. Co. of Am. v. Hughes,* 706 N.E.2d 208, 210 (Ind. Ct.App.1999), *trans. denied.*

We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino,* 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *trans. denied.* We may affirm a trial court's grant of summary judgment upon any theory supported by the designated materials. *Sims v. Barnes,* 689 N.E.2d 734, 735 (Ind. Ct.App.1997), *trans. denied.* Additionally, we "may determine in the context of summary judgment a mixed question of law and fact." *Ebbinghouse v. FirstFleet, Inc.,* 693 N.E.2d 644, 647 n. 2 (Ind.Ct.App.1998), *trans. denied.*

## II. Vendor's Lien

■ Wachovia argues the trial court erred in finding that Lefty's has a valid vendor's lien, and further erred in concluding that this lien takes priority over Wachovia's Development Mortgage recorded on November 28, 2005 and Vertical Mortgage recorded on March 15, 2006.[7]

We begin this discussion with a review of Indiana law regarding creation and termination of a vendor's lien:

Ordinarily a vendor of realty has an implied lien for the amount of the unpaid purchase price. A vendor's implied lien, as distinguished from a lien expressly reserved, or from the security which the vendor has while he holds the legal title under an unexecuted contract to convey, is the equitable right, which by implication is accorded to one who has conveyed the title to land without reserving a lien thereon, and has taken no security for the purchase money other than the personal obligation of the purchaser, to subject the land in equity to the payment of the purchase price. The lien is not dependent on any agreement between the parties other than the con-

7. Lefty's states that under Indiana Trial Rule 41(A)(1)(b), its non-consent to the stipulation among Wachovia, Dune Harbor, and the Additional Loan Guarantors precludes the trial court from entering summary judgment pursuant to and according to the stipulation. Trial Rule 41(A)(1)(b) states that a plaintiff may dismiss an action without order of the court "by filing a stipulation of dismissal signed by all parties who have appeared in the action." However, we note that the stipulation at issue was not executed by Wachovia "without order of the court," and that Trial Rule 41(A)(2) is the applicable rule, which provides for a court's dismissal of a claim "upon such terms and conditions as the court deems proper." As to the permitted effect upon counterclaims and cross-claims, a court may dismiss the action so long as the counterclaim or cross-claim "can remain pending for independent adjudication by the court." *Id.* "The test for determining the propriety of a voluntary dismissal is whether or not the party opposing the dismissal would be substantially prejudiced by dismissal." *Hidden Valley Lake Prop. Owners Ass'n v. HVL Utilities, Inc.,* 445 N.E.2d 575, 576 (Ind.Ct.App.1983) (opinion on reh'g). Lefty's has not demonstrated how or contended that the trial court's dismissal pursuant to the stipulation prejudiced its counterclaim or cross-claim. Indeed, Wachovia appeals following the trial court's summary judgment in favor of Lefty's on its counter- and cross-claim. Without more, we decline to take action regarding this alleged error.

tract to pay the purchase money, and it is presumed to exist in all cases in which such a lien is allowed by law in the absence of a showing of an intent to the contrary.

*Prell v. Trs. of Baird & Warner Mortg. & Realty Investors,* 179 Ind.App. 642, 649–50, 386 N.E.2d 1221, 1227 (1979) (quoting 25 I.L.E. Sales of Realty § 122 (1960)).

■■■ Essentially, when title to land is transferred before payment is completed, the seller has lent money to the buyer in the form of a purchase-money mortgage, and the seller (vendor) retains an automatic security interest in the property. *Lincoln Nat'l Life Ins. Co. v. Overmyer,* 530 N.E.2d 784, 786 (Ind.Ct.App.1988); *accord Union State Bank v. Williams,* 169 Ind. App. 345, 350, 348 N.E.2d 683, 687 (1976) ("[I]t is well settled that a vendor's lien is created at the moment the seller of land completes a transfer of title to the buyer and the purchase price or a portion thereof remains unpaid."). Subsequently, a validly created vendor's lien may be expressly or impliedly abandoned or extinguished, thereby cutting off any future obligations to the vendor. *See Old First Nat'l Bank & Tr. Co. v. Scheuman,* 214 Ind. 652, 666, 13 N.E.2d 551, 557 (1938).

■■■ Next, we evaluate the extent to which, if at all, a vendor's lien was created in the transfer of the Property and subsequently abandoned or extinguished. In February 2003, Lefty's entered into a Restated Option with Abonmarche and later consented to Abonmarche's assignment of the same to DHI. In October 2003, DHI exercised the Restated Option to purchase the Property from Lefty's, and in doing so also executed the DHI Addendum, a corporate warranty deed, and a Notice of Covenants.

Accordingly, we examine the above-mentioned four documents—the Restated Option, the DHI Addendum, the corporate warranty deed, and the Notice of Covenants—for evidence of the creation and the extent, if at all, of a vendor's lien in favor of Lefty's. We also cull the record for evidence of whether the vendor's lien, if any, was abandoned or extinguished prior to November 28, 2005, the date Wachovia recorded its first mortgage regarding the Property.

The Restated Option lists several types of consideration for the transfer of the Property from Lefty's to the grantee. The Restated Option first dictates the purchase price to be $1,000,850,[8] subject to reductions or discounts from others who hold a lien against the Property. In the current litigation, the parties' designated evidence does not refer to when, if at all, this purchase price was paid, and therefore it is unclear if a vendor's lien was created by this provision.

The Restated Option also includes six provisions describing "[a]dditional [c]onsideration" for the transfer of title by Lefty's, regarding: (i) a single family home for Lefty's; (ii) dwelling unit sales; (iii) a boat service facility for Lefty's; (iv) sale of sand and continuing operations during construction; (v) release of a real estate mortgage; and (vi) fees for Robert L. Frum, Sr. if he secures financing. Appellant's App. at 276. The DHI Addendum adds that DHI will provide Lefty's with various appliances in the single family home, and that DHI will pay costs associated with a temporary home while the single family home is built and furnished. The corporate warranty deed provides for transfer of the Property "[s]ubject to" various limitations, but does not add or describe any consideration for transfer itself, other than the customary "$10.00[ ] and other valuable consider-

---

8. *See supra* note 2 (regarding conflicting statements of the purchase price).

ation." *Id.* at 296. The Notice of Covenants does not add any consideration for transfer of the Property.

The single family home described in the Restated Option was not "paid" upon transfer of title, but this obligation was satisfied and any vendor's lien was extinguished. *See id.* at 271 (Lefty's Secretary's affidavit statement that "Abonmarche and/or DHI have performed some of the obligations listed as Additional Consideration in the Option and Addendum, including conveyance of Lot 62 to Lefty [sic] in place of Lot 20 as required by the Option"). To the extent this provision created a vendor's lien upon transfer of title, Lefty's agreed to extinguish this obligation. However, the designated evidence does not speak to whether the various appliances described in the DHI Addendum were supplied to Lefty's.

■ The dwelling unit sales provision states:

(ii) *Dwelling Unit Sales.* Abonmarche shall pay to Grantor Two Thousand Dollars ($2,000) for each lot or condominium unit (residential dwelling unit) on the Property. The parties shall enter into a Development Agreement which shall provide for the payment to Grantor when the residential unit is sold to a third party buyer and the Grantor's retained vendor's lien on the Property for the payment of each installment. The Grantor shall not be entitled to any additional consideration for the marina or non-residential sales.

*Id.* at 276.

■ Under this provision there is at least one condition precedent for Lefty's to be entitled to payment for sale of a residential unit. "Under contract law, a condition precedent is a condition that must be performed before the agreement of the parties becomes a binding contract or that

must be fulfilled before the duty to perform a specific obligation arises." *Cricket Ridge, LLC v. Wright,* 880 N.E.2d 1271, 1278 (Ind.Ct.App.2008) (citation omitted), *trans. denied.* Here, the parties did not enter a development agreement, and the Property remains largely undeveloped. Because these conditions precedent to payment exist, this dwelling unit sales provision does not create a vendor's lien. On the contrary, this provision states that Lefty's may become entitled to payment according to the terms of a Development Agreement—which has not been entered into—or to $2,000 upon sale of each "residential unit." Appellant's App. at 276. These conditions precedent must be fulfilled before the duty to pay Lefty's arises.

Lefty's argues—consistent with the trial court order—that failure to enter into a development agreement may be overlooked and that focus should remain on whether property was sold to a third party. Even if we were to agree that execution of a development agreement was unnecessary, we still conclude that sale of residential units is a condition precedent for Lefty's to be entitled to payment of $2,000 per unit. The duty to pay Lefty's $2,000 per residential dwelling unit sold only arose as each unit was constructed and sold, and did not arise for unsold residential units.

Consequently, we disagree with the trial court conclusions that 1) payment to Lefty's of less than $924,000 is evidence of a vendor's lien in favor of Lefty's, 2) DHI's sale of the still-undeveloped Property to Dune Harbor constitutes sale of a residential unit, and that 3) Lefty's is entitled to payment of the remaining $902,000 under this provision. The dwelling unit sales provision alone did not create a vendor's lien.

In addition, the designated evidence does not lay bare the extent to which the

following "payments" were yet to be made in full at the time of transfer to support a vendor's lien or remained to be paid on November 28, 2005: a boat service facility for Lefty's; release of a real estate mortgage; or fees for Frum, Sr. These are genuine issues of material fact to the extent that they would support creation of a vendor's lien that was in force at the time Wachovia's mortgages were recorded.

Further, the several statements regarding survival of commitments and covenants in the DHI Addendum and Notice of Covenants are of no effect if no vendor's lien exists. Similarly, the reference to a vendor's lien in the corporate warranty deed is of no effect if no vendor's lien exists in fact.

Therefore, the designated evidence does not eliminate genuine issues of material fact as to whether or the extent to which a vendor's lien was created and, if so, the extent to which it was abandoned or extinguished when Wachovia recorded its mortgages.[9] Accordingly, the trial court's summary judgment in favor of Lefty's is improper. In the same vein, because the existence or extent of a vendor's lien remains a genuine issue of material fact, we decline to order summary judgment in favor of Wachovia. Finally, this threshold issue renders immaterial any appellate determination of Wachovia's notice of the purported vendor's lien and whether its scope was to include attorney fees or non-residential property.

*Conclusion*

Genuine issues of fact remain as to whether a vendor's lien was created in favor of Lefty's, and if so, whether it was abandoned or extinguished before Wachovia recorded its mortgages. Therefore, the trial court's summary judgment order that the purported vendor's lien of Lefty's exists and takes priority over Wachovia's mortgages was made in error, and we reverse and remand for further proceedings.

Reversed and remanded.

RILEY, J., and BROWN, J., concur.

---

9. We also acknowledge the controversy surrounding vendor's lien law, particularly the relatively unique characteristic that vendor's liens need not be recorded to be effective. *See Askren v. 21st Street Inn*, 988 F.2d 38, 39 (7th. Cir.1993). The present dispute is itself an example of how this characteristic makes it difficult to eliminate genuine issues of material fact in cases involving vendor's liens. The Seventh Circuit Court of Appeals has commented on a related quandary: "[t]he doctrine [of a vendor's lien] arbitrarily advances the vendor over the vendee's other creditors, and complicates real estate financing. It has been abolished in a number of states, but not in Indiana." *Id.* at 40.